Claude Earn CARTER, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

No. 88–SC–172–MR.

Supreme Court of Kentucky.

Sept. 28, 1989.

Rehearing Denied Feb. 8, 1990.

As Modified Feb. 8, 1990.

Julie Namkin, Dept. of Public Advocacy, Frankfort, for appellant.

Frederic J. Cowan, Atty. Gen., Carol C. Ullerich, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

LEIBSON, Justice.

Claude Carter was convicted in the Logan Circuit Court of possession of marijuana and trafficking in LSD. He was sentenced to five years imprisonment for the marijuana conviction, and ten years imprisonment for the LSD conviction. Both sentences were enhanced to terms of thirteen years, a total of twenty-six years, as a first-degree persistent felony offender.

The principal issues raised on appeal involve taking and admitting into evidence the videotaped deposition of one Charles Elam, Jr., a paid police informant. Elam testified by deposition that he encountered Carter during his quest for drugs. We will summarize his testimony.

According to Elam, on November 3, 1985, he agreed to go with one Billy Driskell from Union City, Tennessee, to Elkton, Kentucky, in search of some marijuana. Elam's girlfriend also went on this excursion. As the trio was leaving the pool hall at Elkton they encountered Carter. Driskell told Elam and his girlfriend to go on to the car and wait, that he would join them in a few minutes. When Driskell joined the others in the car, he told them Carter had agreed to let them have some marijuana on credit to take to Union City and sell. Carter then left in his car while Driskell, Elam and his girlfriend followed in theirs, proceeding by different routes to Carter's house. Carter arrived first.

Driskell, alone at first, entered a trailer located beside the house. Five minutes later he came out and told Elam to come with him. Elam's girlfriend remained in

the car. When they entered the trailer, Elam saw Carter sitting on a couch with a rifle across his lap. Carter opened a cabinet containing marijuana and told the two men that he would allow them to pick out ten bags to take on credit. Elam estimated there was one hundred pounds or more of marijuana in the trailer.

As they were collecting their ten bags of marijuana, Driskell told Elam that they also might be able to get some LSD for Elam. Elam then purchased eight "hits" of LSD from Carter for five dollars apiece. Driskell and Elam then put the marijuana in a tote sack and left Carter's trailer.

When Elam returned to Tennessee he gave the LSD to the Dyersburg Police Department, and informed them of the drug transaction just described. This led to Carter's arrest and the convictions now on appeal.

First, we consider the events leading up to the taking of Elam's deposition. Elam is an out-of-state witness. The deposition was taken on June 30, 1986, pursuant to motion and court order entered May 15, 1986, authorizing a videotaped deposition "for all purposes allowed pursuant to the rule of civil and/or criminal procedure." The Commonwealth utilized KRS 421.250, Kentucky's Uniform Non–Resident Witness Act to secure Elam's appearance for his deposition, pursuant to an order of court which was entered in Oklahoma directing him to attend. Elam was asked on deposition where he would be "come September of this year when this case comes to trial," to which he replied, vaguely, "Honestly I can't say, but I hope to be back in Oklahoma."

Carter's then attorney, Louis M. Waller, appeared at the deposition, but Carter did not attend. Mr. Waller stated for the record that he had written his client on June 20, 1986, advising Carter, "You may wish to be present," and that he had made other efforts to contact him, all with no success. Mr. Waller then stated he could not properly represent his client at the deposition unless Carter was available for consultation, so he would not stay for it. Waller "served notice" that he intended to withdraw as counsel. Later on he withdrew, pursuant to a motion filed July 10, 1986.

Elam was deposed, not subject to cross-examination. No subpoena for trial was ever issued on Elam, whose whereabouts were then unknown. Before trial Carter's new counsel moved to quash the deposition. At the time of trial this motion was overruled upon the Commonwealth's Affidavit that "diligent effort" to locate Elam for trial did not avail. Elam's videotaped deposition was played to the jury. It was the principal evidence proving Carter's guilt.

The Sixth Amendment to the United States Constitution, made applicable to state prosecutions by the Fourteenth Amendment, guarantees Carter the right to confront Elam as a witness against him, and the right to legal counsel. Section Eleven of Kentucky's Constitution guarantees Carter those same rights. The question is whether the use of Elam's deposition at trial violated Carter's rights.

The first problem is whether the deposition of Elam, taken without the presence of Carter or his counsel, deprived him of his right to confront Elam, as Carter asserts, or, whether Carter and his counsel effected a waiver of that right, as the Commonwealth asserts. We hold that Carter's right to confront Elam at the deposition was waived.

Ample notice of the deposition was provided to Carter's counsel. Carter's attorney appeared at the deposition and announced that he was serving notice that he would withdraw as Carter's counsel. But that motion had not yet been considered or sustained. He made a conscious decision not to remain and not to cross-examine in his representative capacity as Carter's attorney, proceeding in what he no doubt believed to be Carter's best interest. Carter's counsel knew well in advance of the deposition that Elam would be deposed as a prosecution witness, and therefore had ample opportunity to prepare for cross-examination. There was no evidence that Carter, personally, had a legal reason why he was unable to attend, and no proof that his presence would have made a difference.

Carter's counsel never requested a continuance of the deposition, or objected to its being taken before he walked away from it. He could not properly obtain a tactical advantage by refusing to stay. As in *Richmond v. Commonwealth*, Ky., 637 S.W.2d 642, 647 (1982), Carter was not "denied an adequate opportunity of confrontation." Waiver occurred.

▮▮▮ Appellant argues that before the deposition could be utilized the Commonwealth must establish a good faith effort to procure the personal attendance of the witness. *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Elam's presence at the deposition was procured using the Uniform Non–Resident Witness Act, KRS 421.250, but the Commonwealth could not use the same act to arrange his presence at trial because the Commonwealth did not know his whereabouts at the time of trial. Under KRS 421.260, Elam was not subject to subpoena for trial when he was present in the jurisdiction only by reason of a court order to attend and testify by deposition. Moreover, two police officers working with the prosecution testified that, while they did not know Elam's whereabouts, they knew that Elam wanted to stay away from Kentucky because he was afraid of Carter. It is not surprising that he had vanished by trial time.

We agree with Carter it does not follow that, because Carter and his attorney waived his right to confront Elam at the deposition, his right to confront and cross-examine Elam at trial was also waived. *See Barber v. Page, supra*, 390 U.S. at 725, 88 S.Ct. at 13. Nevertheless, RCr 7.20 authorizes the use of a deposition in appropriate circumstances relating to unavailability, as specified therein. The decision whether the Commonwealth made a bona fide effort to have Elam present at trial is one addressed to the sound discretion of the trial court. The circumstances here do not demonstrate an abuse of discretion.

After the jury had been shown Elam's videotaped deposition, the Commonwealth called Lieutenant Rieger of the Union City, Tennessee Police Department to the stand. Rieger testified that Elam was working for his department as an informant/undercover agent for the purpose of helping to arrest persons making illicit drug deals. He was asked to tell the jury what Elam had told him about the trip he had made to Kentucky that led to Carter's arrest. Defense counsel objected on hearsay grounds. The objection was overruled. Rieger's testimony included details of what Elam had told him, and of Rieger's resultant investigation.

▮▮▮ Arguably, some of Lt. Rieger's testimony relative to what Elam had told him should have been disallowed.

"[H]earsay is no less hearsay because a police officer supplies the evidence. In short, there is no separate rule, as such, which is an investigative hearsay exception to the hearsay rule." *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534, 541 (1988).

Background information supplied to a police officer may be admissible under the "verbal act" doctrine in circumstances where it has a "proper nonhearsay use" to explain "the action subsequently taken by the police officer." *Id.* Otherwise, as with any other witness, the officer may only repeat hearsay when to do so conforms to a recognized hearsay exception.

▮▮▮ Nevertheless, the statements Rieger attributed to Elam did not directly name or implicate Carter. According to Rieger, Elam told him that he and Billy Driskell brought back ten pounds of marijuana packaged in plastic bags and stashed it in Driskell's car or apartment. Both parties to the conversation, Rieger and Elam, testified at trial, Rieger in person and Elam by deposition. Rieger was fully cross-examined and Elam could have been cross-examined had Carter or counsel elected to attend a deposition where there was ample opportunity to do so.

Under the circumstances, if any of Rieger's testimony was inadmissible hearsay, it was harmless error. Because the objectionable testimony merely repeated Elam's deposition, there is no "substantial possibility" that Carter would have been acquitted absent the questionable portions of Rieg-

er's testimony. *Niemeyer v. Commonwealth*, Ky., 533 S.W.2d 218, 221 (1976).

Carter next argues a violation of the rule in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requiring the Commonwealth, upon request, to notify the defense in advance of trial of exculpatory evidence known to the prosecution. Defense counsel had filed a pretrial discovery motion which included an interrogatory asking the Commonwealth what compensation had been paid to any of its witnesses. The Commonwealth filed its answer to the question, which was "None." Defense counsel learned at trial that Elam had received compensation from the police for his services as an undercover informant. Former Kentucky State Police Officer John Fuqua testified that in return for Elam's information and the physical evidence (the LSD) that was recovered, Elam was paid between $200 and $500. Upon hearing this evidence, counsel moved for a mistrial or at least a week's continuance to have time to subpoena the records relating to Elam's payment.

Defense counsel argued that this information was exculpatory evidence because the payment could have been a motive for Elam to lie. The Commonwealth responds that it did not know that Elam had been paid until Fuqua so testified.

■ The prosecution's good faith or bad faith relative to the failure to provide requested exculpatory information is a factor to be considered. *Brady v. Maryland, supra.*

■ It is highly unlikely that more precise information about the financial relationship between Elam and the police could have had any significant influence on the outcome of the trial. Since Officer Fuqua testified to the payment and the price range, a continuance would have yielded nothing further of substantial significance. The question of whether there was a *Brady* violation and whether because of it a continuance or mistrial was necessary is another one, like the unavailability of a witness, previously discussed, addressed to the judgment and discretion of the trial court. It will not be reviewed unless the

trial judge's decision is clearly unreasonable. In present circumstances we cannot say the trial court's ruling was an abuse of discretion.

■ Carter's next issue is that, after the jury returned with a verdict finding him guilty of *both* possession *and* trafficking in LSD, the trial court improperly advised the jury how to correct the verdict. While explaining to them the difference in these two offenses, and that they could not find Carter guilty of both, presumably the court also informed them that the offense of trafficking carries a stiffer penalty than the offense of possession. Carter argues that this information may have impermissibly influenced the jury to find him guilty of the more serious offense. He claims that telling the jury sentencing information during the guilt/innocence phase of the trial violated the statutory process of a bifurcated trial as set forth in the new truth-in-sentencing statute, KRS 532.055, and thereby denied him due process of law. We agree the statute now so provides.

■ But the Commonwealth responds the record does not reflect that the trial court told the jury the difference between the penalties. When the trial court was talking to the jury about their erroneous double guilty verdict, the record shows only that the court reporter parenthetically summarized the proceedings. We are not clear on exactly what was said to the jury. We know only that in a colloquy appearing *after* the parenthetical summary the court stated:

"THE COURT: Of course, I didn't tell them that until they had indicated to the court that they had found him guilty on both."

Without seeking to resolve the controversy as to what, exactly, was said, we note, more importantly, that the court could have struck the verdict for the lesser offense without taking the step of sending the jury back. Applicable double jeopardy principles do not preclude Carter's *conviction* for both offenses, only his *punishment* for both. *Cf. Jones v. Commonwealth*, Ky., 756 S.W.2d 462 (1988); *Jordan v. Com-*

*monwealth,* Ky., 703 S.W.2d 870 (1985). Conviction for both offenses was not an inconsistent verdict. The trial court could have simply set aside the verdict for the lesser offense. Therefore, the comment to the jury was harmless in any event.

■ Carter's next point of contention is that it was error for the court to conduct the penalty phase of the trial in his absence. Carter failed to appear for the sentencing phase, and has never explained his absence. He told his father the night before that he would attend. The next morning the court waited one and one-half hours for Carter, or some explanation for his absence, before proceeding. Carter's absence can only be said to have been voluntary.

■ Both sides agree the prosecution failed to adduce evidence during the sentencing phase that Carter was at least eighteen years of age when he committed the prior crimes which were the basis for finding him a PFO. This is a necessary statutory element for such a finding. The Commonwealth, the defense and this Court agree that this was a material error in the sentencing of Carter. *Hon v. Commonwealth,* Ky., 670 S.W.2d 851 (1984).

Appellant's convictions for the underlying offenses are affirmed. His PFO convictions are reversed. This case is remanded to the Logan Circuit Court for resentencing on the underlying offenses, consistent with this Opinion.

STEPHENS, C.J., and GANT, LAMBERT, LEIBSON, VANCE and WINTERSHEIMER, JJ., concur.

COMBS, J., dissents by separate opinion.

COMBS, Justice, dissenting.

I agree that appellant's PFO conviction should be reversed but disagree with my brethren as to the underlying offenses. For that reason I would reverse these convictions and remand for a new trial.

In affirming the underlying offenses the majority finds that the admissibility of the hearsay testimony by Lt. Rieger was harmless error. I disagree. It is true that Lt. Reiger was merely "parroting" the testimony of Elam, but the same testimony coming from a police officer would be more persuasive to a jury than the testimony of an informer.

I also disagree with the majority's conclusion that the trial court did not abuse its discretion when it failed to sustain appellant's motion for a mistrial or continuance after it was developed that Elam was in fact a paid informer. KSP officer John Fuqua knew that he was paid between two hundred and five hundred dollars for the evidence obtained from appellant. It was also established that Elam was receiving one hundred fifty dollars per week on a regular basis—an amount substantially different from a range of between two hundred and five hundred. Ascertainment of more precise information about the financial arrangement between Elam and the police was relevant and material. The Commonwealth cannot be held to say that it did not know about the financial relationship of Elam until Fuqua testified. Fuqua was an officer of the Commonwealth at this time and his knowledge is imputable to the Commonwealth.

As stated by the United States Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 83, S.Ct. 1194, 10 L.Ed.2d 215 (1963):

> Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to the guilt or to punishment, *irrespective of the good faith or bad faith of the prosecution.* [Emphasis added.]

I agree with my brethren that appellant waived his right to confront Elam at the deposition. His counsel had ample notice of the deposition and ample opportunity to prepare for cross examination but failed to do so. While appellant's counsel had sought to withdraw as counsel his motion had not been granted and therefore he was obligated to represent appellant. Thirdly, his counsel did not request a continuance of the deposition or object to it being taken prior to leaving. See *Richmond v. Commonwealth,* Ky., 637 S.W.2d 642 (1982).

The most egregious error committed at this trial was the denial of appellant's right of confrontation. This right is guaranteed by Section 11 of our constitution and is one of the most important rights granted to the accused. The pertinent portion of that section is as follows:

> In all criminal prosecutions the accused has the right, . . . to meet the witnesses face to face. . . .

Appellant, Claude Earn Carter, was denied that right!

The Commonwealth failed to demonstrate that it ever made a good faith effort to obtain the presence of Elam at the trial. A pattern of disregard for appellant's constitutional rights began as early as two days after the deposition was taken. It was that soon that the Commonwealth moved the court to rule on the admissibility of the deposition at trial.

The Commonwealth on two separate occasions issued two batches of subpoenas for witnesses to appear at trial, but never issued a subpoena for Elam.[1] The Commonwealth procured Elam's presence at the deposition by utilizing the Uniform Nonresident Witness Act, but never made use of the same act to assure Elam's presence at trial. The Commonwealth contends that it did not know Elam's whereabouts at the time of trial. On September 10, 1986, the court continued the case until January 5, 1987, yet the Commonwealth at that time failed to inform Elam that he would be needed at trial. Moreover, two police officers working with the prosecution testified that although they did not know Elam's whereabouts at the time of trial they knew in advance that Elam wanted to stay away from Kentucky because he was afraid of Carter. Unavailability of a witness for trial for purposes of the traditional exception to the confrontation right is not recognized unless the prosecution has made a good faith effort to obtain the presence of the witness at trial. *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). It is the obligation of the Commonwealth to provide a fair trial to every accused, and to that end the prosecution must see that the legal rights of the accused as well as those of the Commonwealth are protected. *Moore v. Commonwealth,* Ky., 634 S.W.2d 426 (1982). Here the Commonwealth failed to perform that vital duty owed to appellant.

show that, and the only subpoenas we find in the record are not for Elam. We are not surprised that any such subpoena was unserved for reasons that will become clear infra.

---

1. The Commonwealth in its brief asserts that it tried to assure Elam's trial appearance as evidenced by a "unserved subpoena". However, it refers this Court to no portion of the record to