**Claude Earn CARTER, Petitioner–Appellant,**

v.

**Dewey SOWDERS, Warden, Northpoint Training Center, Respondent–Appellee.**

No. 91–6419.

United States Court of Appeals, Sixth Circuit.

Argued April 23, 1993.

Decided Sept. 27, 1993.

Order Denying Rehearing Dec. 16, 1993.

---

3.  *E.g., Lynch,* 880 F.2d at 1128.

Julie Namkin (argued and briefed), Dept. of Public Advocacy, Frankfort, KY, for petitioner-appellant.

Carol C. Ullerich, Asst. Atty. Gen. (argued and briefed), Chris Gorman, Atty. Gen., Frankfort, KY, for respondent-appellee.

Before: MERRITT, Chief Judge; and KEITH and SUHRHEINRICH, Circuit Judges.

MERRITT, Chief Judge.

Claude Earn Carter appeals the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of possession of marijuana and trafficking in LSD. Central to his conviction was the testimony of Charles Elam, Jr., a paid police informant. Elam's video deposition was taken in the absence of both petitioner and his counsel, and the deposition was later admitted, over petitioner's objection, at trial. Because petitioner did not waive his constitutional rights under the Confrontation Clause to confront his accuser and subject his testimony to cross-examination, the deposition did not bear adequate indicia of reliability for admission at trial. We therefore reverse the district court and grant the petition.

## I.

Charles Elam was a salaried narcotics agent with the Dyersburg, Tennessee Police Department, earning $150/week. According to Elam's deposition testimony, Elam and Billy Driskell purchased marijuana and LSD from petitioner at a house trailer in Kentucky on November 3, 1985, and returned to Tennessee. Elam then took a group of Tennessee police officers to Kentucky and showed them the trailer where the drugs were purchased. The trailer was searched under warrant November 5, and Carter was arrested while working in the fields near the trailer. He denied ownership of marijuana found in the trailer, or that he had ever met Elam.

Carter was indicted by the Logan County, Kentucky, Grand Jury on December 27, 1985 for the drug offenses and for being a first degree persistent felony offender. He was arraigned January 17, 1986, and the trial was set for April 24 of that year. In preparation for trial, the Commonwealth moved March 4 to take a videotape deposition of Elam, giving no specific ground. A second motion was filed March 17, this time alleging that a pretrial deposition was necessary, since the Commonwealth could not secure the attendance of Elam, a Tennessee resident, at Carter's trial in Kentucky. The court granted the motion. On April 14, the Commonwealth subpoenaed three Kentucky police officers to appear at Carter's trial ten days later. No subpoena was issued for Elam, nor were other efforts made to secure his attendance. On April 23, Carter's trial was continued from April 24 to September 25, 1986. The next day, the Commonwealth filed an ex parte petition, pursuant to Tennessee's Uniform Non–Resident Witness Act, to secure the attendance of Elam for the purpose of deposing him May 15, 1986. The court granted the petition within a day. There was no deposition on May 15. Instead, the Commonwealth filed another ex parte petition, this time pursuant to Oklahoma's Uniform Non–Resident Witness Act, to secure Elam's presence in Kentucky to depose him June 30. The petition was granted the same day.

On June 5, the prosecutor wrote Carter's counsel, Louis Waller, notifying him of Elam's deposition on June 30 and stating that the "deposition will be read at [Carter's] trial" in September. According to Waller's statement at the June 30 deposition, he did not receive the notice until June 20. He then sent a letter to Carter, informing him of the deposition and stating "you may wish to be present." Waller received no response to the letter or to several subsequent phone calls made prior to the deposition. The trial court specifically found there was "no evidence that [Carter] had notice that he was suppose [sic] to be there."

The deposition was held as scheduled June 30. Waller appeared, but told the prosecutor that he could not effectively represent Carter without his presence. He further indicated that he intended to withdraw from the case. He then left the deposition, but not before pointing out to the prosecutor that if Elam could be compelled to come to Kentucky for a deposition, there was no reason why he could not be present for trial in September. The prosecutor proceeded to depose Elam in the absence of petitioner and his counsel, and without any cross-examination. Two days after the deposition, the Commonwealth moved for a ruling on the admissibility of the deposition at trial in lieu of live testimony.

In preparation for the new September 25 trial date, the Commonwealth issued subpoenas for seven witnesses September 8. Elam was not among them. The court having granted Waller's motion to withdraw, new counsel was appointed for Carter September 9. The following day, the court continued the trial to January 5, 1987. Approximately one week later, Carter's new counsel moved to quash Elam's deposition, on the grounds that Carter was denied his constitutional right to confront his accuser at the deposition. The motion was not denied until trial, almost four months later.

On December 18, 1986, less than three weeks prior to trial and more than five months after Elam's deposition, the prosecutor wrote Elam in Oklahoma notifying him of the new trial date and stating he "would like for [him] to come back to Kentucky in order to testify in person." On the same day, the

prosecutor wrote the Logan Circuit Court Clerk, asking that a subpoena be issued for Elam. The letter to Elam was returned to the prosecutor because of an expired forwarding order, and the subpoena was issued bearing the same address, but was not served. The prosecutor made a one-minute phone call to Oklahoma December 26, a four-minute phone call to Union City, Tennessee December 31, and four days prior to trial, on January 2, 1987, nine phone calls to Oklahoma lasting a total of sixteen minutes, in an effort to locate Elam.[1]

The trial commenced January 6, 1987. Immediately prior to trial, Carter's counsel stated on the record that although his motion to quash Elam's deposition had been argued, it had not been transcribed, and he reiterated his objections to its admission. He argued that the absence of Carter at Elam's deposition denied him his right to confront his accuser. He also emphasized to the court that the Commonwealth had used the Uniform Non–Resident Witness Act to procure Elam's attendance at his deposition, but had not made a similar effort to obtain his presence at trial. The motion was overruled and the deposition was read as the Commonwealth's first witness. One of the police officers also testified concerning what Elam had told him prior to taking them to Kentucky to show them the trailer. The trial court overruled petitioner's objection to introduction of this hearsay testimony.

The jury found Carter guilty of possession of marijuana and trafficking in LSD, and of being a first degree persistent felony offender. Carter appealed. The Kentucky Supreme Court upheld his substantive convictions, but reversed his first degree persistent felony offender conviction due to insufficient evidence. *Carter v. Commonwealth,* 782 S.W.2d 597, 602 (Ky.1989). After his petition for writ of certiorari to the United States Supreme Court was denied, 497 U.S. 1029, 110 S.Ct. 3282, 111 L.Ed.2d 791 (1990), Carter filed a petition for writ of habeas corpus in the district court, which was denied November 1, 1991. Carter filed a Motion for Certificate of Probable Cause in this Court

March 10, 1992, which we granted April 15, 1992.

## II.

Petitioner's claims on appeal all revolve around Elam's testimony. Petitioner asserts that the prosecutor's decision to continue Elam's deposition after the departure of petitioner's attorney denied him his Sixth Amendment right to counsel, and his right under the Fifth, Sixth and Fourteenth Amendments to be present at all critical stages of the proceeding against him. Petitioner further contends that the failure of the trial court to suppress the deposition at trial violated his Sixth Amendment right to confront his accuser, due both to the Commonwealth's lack of a good-faith effort to obtain Elam's presence at trial and due to the inherent unreliability of a deposition not subjected to cross-examination. Finally, he asserts the admission of Elam's hearsay statements through the officer's testimony at trial was reversible, not harmless, error. We review de novo a district court's refusal to grant a habeas petition, and the district court's factual determinations are reviewed under the clearly erroneous standard. *McCall v. Dutton,* 863 F.2d 454, 459 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1744, 104 L.Ed.2d 181 (1989). We defer to state court findings if supported by the evidence. *Lundy v. Campbell,* 888 F.2d 467, 469 (6th Cir. 1989), *cert. denied,* 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990).

The Sixth Amendment on its face guarantees a criminal defendant the right "to be confronted with the witnesses against him." The Supreme Court has recognized that this language "comes to us on faded parchment ... with a lineage that traces back to the beginnings of Western culture." *Coy v. Iowa,* 487 U.S. 1012, 1015, 108 S.Ct. 2798, 2800, 101 L.Ed.2d 857 (1988). "The Confrontation Clause provides two types of protection to the criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987).

---

1. The phone bill listing these calls appeared in the prosecutor's Motion to Supplement, filed one

month after Carter's trial. The identities of the parties called were not given.

Both protections are crucial. "There is something deep in human nature that regards face-to-face confrontation between accused and accuser as 'essential to a fair trial in a criminal prosecution.'" *Coy*, 487 U.S. at 1017, 108 S.Ct. at 2801 (quoting *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)). Similarly, the Confrontation Clause "forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth,'" *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970) (quoting 5 J. Wigmore, Evidence § 1367, (3d ed. 1940)).

Against this backdrop, the absence of Carter's counsel during Elam's deposition demands close scrutiny. As the Supreme Court stated in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984):

> [I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.... The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.

*Id.* at 659 & n. 25, 104 S.Ct. at 2047 & n. 25; In *Green v. Arn*, 809 F.2d 1257 (6th Cir.), *vacated on other grounds*, 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987), *reinstated*, 839 F.2d 300 (6th Cir.1988), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 979 (1989), this court had the opportunity to apply *Cronic* in a situation where defense counsel absented himself from petitioner's trial while the prosecution was presenting its case. Counsel for two other defendants in the case was present, and conducted cross-examina-

tion of the state's first witness. Nevertheless, we found that petitioner's rights under the Confrontation Clause had been violated by the absence of her counsel during this critical stage of the proceeding:

> It is difficult to perceive a more critical stage of a trial than the taking of evidence on the defendant's guilt.... The absence of counsel during the taking of evidence on the defendant's guilt is prejudicial per se and justifies an automatic grant of the writ "without any opportunity for a harmless error inquiry." *Siverson v. O'Leary*, 764 F.2d 1208, 1217 [& n. 6] (7th Cir.1985).

*Id.* at 1263.

■■■ This case is similar to *Green*. It is undisputed that Elam's videotaped testimony was the sole evidence supporting Carter's conviction for the drug offenses of November 3, 1985. Although Lt. Ken Rieger was present to be cross-examined at trial, his information concerning the November 3 transactions came entirely from discussions with Elam. He did not travel to Kentucky until November 5. The taping of the deposition was, for all practical purposes, the only time "evidence on the defendant's guilt" was taken. The unmitigated absence of cross-examination at this time meant that Elam's testimony was never subjected to "the crucible of meaningful adversarial testing," *Cronic*, 466 U.S. at 656, 104 S.Ct. at 2045. Of course, *Green* is distinguishable on its facts; the absence of Green's counsel occurred at trial, rather than at a pre-trial deposition. We do not explicitly extend today the holding in *Green* to cover pre-trial depositions as well as trials, however similar the impact on the defendant's Confrontation Clause rights. But our reasoning in *Green* supports our conclusion here that Elam's videotaped deposition was hearsay, and was improperly admitted under the "unavailable witness" exception, Ky.R.Evid. 804 (Baldwin 1992).[2]

2. Ky.R.Evid. 804 states in relevant part:

Hearsay exceptions: declarant unavailable
(a) Definition of unavailability. "Unavailability as a witness" includes situations in which the declarant:

(5) Is absent from the hearing and the proponent of the statement has been unable to pro-

cure the declarant's attendance by process or other reasonable means.

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken

Ky.R.Evid. 804 is substantially identical to Fed.R.Evid. 804, lacking only the residual hearsay exceptions permitted by subsection (5) of the federal Rule. In *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court set forth the standard to be applied in defending this hearsay exception against Confrontation Clause claims:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Id.* at 66, 100 S.Ct. at 2539. In *Barber v. Page*, 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1321–22, 20 L.Ed.2d 255 (1968), the Court articulated the burden which must be met by the Commonwealth to satisfy the "unavailability" prong of the foregoing test: "a witness is not 'unavailable' ... unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." The test for review of compliance with this standard defies precise explication: "The lengths to which the prosecution must go to produce a witness ... is a question of reasonableness." *Ohio v. Roberts*, 448 U.S. at 74, 100 S.Ct. at 2543 (citing *California v. Green*, 399 U.S. at 189, n. 22, 90 S.Ct. at 1951, n. 22 (concurring opinion)).

We find it unnecessary to reach the issue of whether the Commonwealth's attempts to secure Elam's attendance at trial satisfy the good-faith effort test enunciated in *Barber,* however, because we hold that Elam's deposition, taken in violation of Carter's rights under the Confrontation Clause, could not satisfy the "other adequate indicia of reliability" standard imposed by the unavailable witness exception to the hearsay rule. Elam was not forced to confront Carter as he gave

in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor

his deposition. He was not cross-examined. These circumstances could not provide the trier of fact with "a satisfactory basis for evaluating the truth of the prior statement." *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970).

■ The Commonwealth argues that the *Ohio v. Roberts* test is met in this case, because Elam's deposition was admitted under a "firmly rooted hearsay exception," 448 U.S. at 66, 100 S.Ct. at 2539, namely Ky. R.Crim.Proc. 7.20(1), which provides in relevant part:

> At the trial or upon any hearing, a part or all of a deposition, *so far as otherwise admissible under the rules of evidence,* may be used if it appears: ... that the witness is out of the Commonwealth of Kentucky, unless it appears that the absence of the witness was procured by the party offering the deposition; or ... that the party offering the deposition had been unable to procure the attendance of the witness by subpoena.

(emphasis supplied). This argument is without merit. As the emphasized portion of the preceding text shows, the rule governs production of evidence *subject to* the rules of evidence. Hearsay evidence from unavailable witnesses is governed by Ky.R.Evid. 804(b)(1), which includes the requirement that the party against whom the testimony is now offered had a prior "opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." But this is the very opportunity that was denied to Carter. The requirements of the exception are not met.

The Commonwealth contends that Carter waived his Sixth Amendment rights through his failure to attend the deposition after his attorney sent him written notice and tried to contact him several times by phone. It is not clear why this assertion, if true, would overcome the reliability problem with the deposition. Furthermore, we disagree with the premise. Waiver of the right to confront

in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

one's accuser is evaluated according to the standards for waiving any constitutional right as enunciated in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and requires "an intentional relinquishment or abandonment of a known right or privilege." The right "may be waived only by voluntary and knowing action." *Boyd v. Dutton*, 405 U.S. 1, 2–3, 92 S.Ct. 759, 759–761, 30 L.Ed.2d 755 (1972). The trial court found that there was no evidence that Carter ever received the letter from his attorney concerning the deposition, and that finding is presumed correct. 28 U.S.C. § 2254(d). Furthermore, the letter, even if received, did not inform Carter of his constitutional right to attend, nor did it urge him to exercise that right ("you *may* wish to be present") (emphasis supplied). Most importantly, the letter did not provide Carter with any notice of the consequences if he failed to appear—that his attorney would leave the deposition and permit the state's key witness to be deposed without any cross-examination whatsoever. Although a waiver may be implied and not express, there must be evidence in the record to support that implication. This court's statement in *Evans v. United States*, 284 F.2d 393 (6th Cir.1960) is directly applicable: "the record does not show that defendant knew or was advised of his rights. In order to constitute a waiver, there must be a voluntary relinquishment of a *known* right." *Id.* at 395. We find Carter did not personally waive his right to confront Elam.

■ The district court found that Carter nonetheless effected a waiver of this right

through the actions of his attorney, who appeared for the deposition and then departed. We find this conclusion inconsistent with *Zerbst*. As the Second Circuit stated in *United States v. Crutcher*, 405 F.2d 239, 243 (2d Cir.1968), *cert. denied*, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969), referring to defense counsel's decision to proceed with jury impanelling in the defendant's absence: "[E]ven assuming [counsel] had the authority to act as Payne's counsel, he would not have the ability to bind Payne to a decision of this type without obtaining Payne's consent." The Tenth Circuit came to a similar conclusion in *Larson v. Tansy*, 911 F.2d 392, 396 & n. 2 (10th Cir.1990):

> The record indicates defendant's counsel, and not defendant, waived defendant's right of presence at trial. The trial court never directly addressed defendant concerning his counsel's request to conduct the remainder of the trial in defendant's absence. We hold that defendant did not waive his right to be present.... Even if defense counsel could have validly waived defendant's right to be present for the conclusion of his trial, where defense counsel did not consult with defendant concerning the waiver and did not obtain defendant's consent, the waiver will not be binding on defendant.

We similarly find that, even if Waller's actions at the deposition could constitute a waiver of the defendant's rights under the Confrontation Clause, the waiver would not bind Carter in the absence of a showing that he consented.[3] As the Supreme Court stated in *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975): "It is the accused, not counsel, who must be 'informed of the nature and cause of the

3. The Kentucky Supreme Court found that "Carter's right to confront Elam at the deposition was waived" because "[a]mple notice of the deposition was provided to Carter's counsel ... There was no evidence that Carter, personally, had a legal reason why he was unable to attend, and no proof that his presence would have made a difference." *Carter*, 782 S.W.2d at 599. This obviously conflicts with our reading of *Zerbst*. Moreover, the Kentucky Supreme Court made statements in an opinion decided the same day, *Dean v. Commonwealth*, 777 S.W.2d 900 (Ky.1989), that would lead to precisely the opposite result from that reached in *Carter:*

> We hold that because the right to be present and to confront is personal to the accused under Section 11 of the Kentucky Constitution, and more particularly under [Ky.R.Crim.Proc.]

7.12, only the defendant can waive this right. The waiver must be sufficiently clear "as to indicate a conscious intent." *Powell v. Commonwealth*, 346 S.W.2d 731, 734 (1961).... [A]ppellant's counsel waived appellant's right to be present at the depositions of the two prosecution witnesses. There is no indication in the record that it was appellant's conscious intent to waive this right and his consequent right to cross-examination. Counsel's waiver being ineffective, there was no waiver.... Appellant was not present; nor was he afforded the right to confront and cross-examine the witnesses called to testify against him.

*Id.* at 903. We can discern no reason why a different standard was used in deciding Carter's fate.

accusation,' who must be 'confronted with the witnesses against him'. . . . The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails."

We address finally the argument advanced by the Commonwealth that our ruling today will give every defendant's lawyer the power to obtain habeas relief for a client, merely by neglecting to inform the client of opportunities to confront his accusers. We rejected this argument in *Martin v. Rose*, 744 F.2d 1245 (1984), and see no reason to depart from our reasoning in that case:

> [W]e are unwilling to assume that members of the bar will cold-bloodedly adopt [such a] bizarre and irresponsible stratagem. . . . If such a tactic develops, the trial court must respond, but it is not helpless before an attorney's [tactics]. . . . [T]he court's contempt power or the disciplinary mechanism of the bar may be appropriately invoked.

*Id.* at 1251–52.

### III.

Carter had the right to confront Elam, his accuser. Denial of that right without a valid waiver rendered Elam's deposition unreliable for purposes of admissibility at trial over a hearsay objection. Because Carter's conviction was based solely on Elam's testimony, the error was not harmless. We therefore REVERSE the decision of the district court, and GRANT the petition for writ of habeas corpus.

### ORDER
#### Dec. 16, 1993.

The Kentucky Attorney General's petition to rehear this habeas appeal is denied. The entire thrust of the petition is that petitioner Carter had notice of the deposition used in substitution for live testimony at Carter's criminal trial and that Carter knowingly waived his right of confrontation. This one point is repeated time and again for fifteen pages. The problem with this repeated point is that the record demonstrates that it is simply factually inaccurate, as our previous opinion concludes, and as the state trial judge flatly found as a fact. The state trial judge found that there is no evidence that [Carter] failed to show for the deposition in this case. There is no evidence that he had notice he was supposed to be there. This Court is not empowered to set aside the reasonable factual findings of the Kentucky trial court, undisturbed by the state appellate courts. Thus the only significant evidence at Carter's criminal trial was a deposition of Carter's chief accuser, a deposition Carter had no notice of. Under the Confrontation Clause live testimony subject to cross-examination is required in order to convict in such a case.

Accordingly, the petition to rehear is DENIED.