Rick NORTON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 1998–SC–1076–MR.

Supreme Court of Kentucky.

Feb. 22, 2001.

Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Albert B. Chandler III, Attorney General, David A. Sexton, Vickie L. Wise, Assistant Attorneys General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

STUMBO, Justice.

This case presents two issues for our consideration: first, whether the mention of sentencing information during voir dire and the guilt/innocence phase of trial requires reversal in this case, and second, whether a trial court may order a sentence for contempt to run consecutively to a felony charge.

Appellant, Rick Norton, was charged with second-degree burglary for breaking a basement window and entering the home of Judy Schill. Upon hearing the sound of crunching glass and someone walking around in the basement, Schill's son sought to foil the burglar. When Appellant became aware that someone was in the home, he took off running. Schill's two sons chased Appellant, caught him, and held him down until police arrived and arrested him. At trial, Appellant admitted breaking the window, but denied that he ever entered the dwelling. The jury convicted Appellant of second-degree burglary and of being a persistent felony offender (PFO) in the first degree. He was sentenced to ten years' imprisonment on the burglary count, enhanced to twenty years by the PFO conviction. The court then sentenced Appellant to ninety (90) days'

incarceration after holding him in contempt for disruptive behavior at trial. The court ordered the contempt sentence to be run consecutively to the twenty-year burglary and PFO sentence. Appellant now appeals as a matter of right. Ky. Const. § 110(2)(b). For the reasons to be set forth below, we affirm Appellant's conviction and sentence.

Appellant first argues the trial court committed reversible error in permitting the prosecutor to mention sentencing information during the guilt/innocence phase of the trial, and in failing to grant a mistrial upon Appellant's request. Because we have reconsidered our holding in *Carter v. Commonwealth*, Ky., 782 S.W.2d 597 (1990), we find Appellant's contention to be without merit.

■ The prosecutor first mentioned sentencing issues during voir dire when he questioned the prospective jurors on their ability to follow the law and consider any potential punishment in the authorized penalty range. Appellant objected several minutes later, rather than by contemporaneous objection as required by RCr 9.22. Nevertheless, we will address the merits of this argument in order to revisit and clarify the state of the law regarding the admissibility of sentencing information during voir dire.

Appellant claims our holding in *Carter v. Commonwealth*, 782 S.W.2d at 601, absolutely precluded the prosecutor from mentioning anything pertaining to sentencing or penalty range at any point prior to the sentencing phase of the trial. Indeed, in *Carter*, we held that "telling the jury sentencing information during the guilt/innocence phase of the trial violated the statutory process of a bifurcated trial as set forth in the new truth-in-sentencing statute, KRS 532.055," thereby denying the defendant due process of law. *Id.* Our fear was that if sentencing information is admitted and explained during the guilt/innocence phase of trial, the information may impermissibly influence the jury to find

the defendant guilty of the offense which carries the penalty it desires to impose, rather than guilty of the offense (if any) which s/he actually committed.

However, we later clarified the holding of *Carter* in the case of *Shields v. Commonwealth*, Ky., 812 S.W.2d 152 (1991). In *Shields*, we reiterated that generally, jurors should not be exposed to "purely 'sentencing information'" during the guilt/innocence phase of the trial. *Id.* at 153. We held, however, that the law "does not absolutely preclude their being given some information of that type incidental to a proper voir dire examination." *Id.* This is so because, "[i]n order to be qualified to sit as a juror in a criminal case, a member of the venire must be able to consider any permissible punishment. If he cannot, then he properly may be challenged for cause." *Id.* Here the prosecutor raised the issue of sentencing briefly during voir dire, for exactly the reasons of which we approved in *Shields*.

■ Appellant also argues that the prosecutor violated the *Carter* prohibition when he discussed the sentencing issue during his closing argument. The prosecutor's statement must be viewed in its proper context. During voir dire, defense counsel informed the jury that his client was guilty only of attempted burglary, not second-degree burglary. He repeatedly asked jurors if they would "max out" the defendant because he had admitted to attempting to burglarize the Schills' home. During closing arguments, defense counsel explained that Appellant had admitted all of the elements of second-degree burglary except for entering, and, thus, he could only be convicted of attempted burglary.

In response, the prosecutor contended during his closing argument that Appellant admitted every element short of entering the dwelling because he hoped to receive the substantially lesser penalty that he would receive if he were convicted of attempted burglary instead of burglary. The defense objected and moved for a mistrial, which the trial court denied. We

find the prosecutor's argument to be entirely appropriate. The defendant here put the question of penalty at issue during the guilt/innocence phase of trial when he admitted all of the elements of the lesser offense and asked the jury not to "max" him out. Consequently, he invited the prosecutor to address his motive for so testifying and incriminating himself. It is entirely proper for the parties to comment on motive, tactics, evidence, and falsity of a defense. *See Tamme v. Commonwealth*, Ky., 973 S.W.2d 13, 38 (1998) (citing *Bowling v. Commonwealth*, Ky., 873 S.W.2d 175, 178–79 (1993), and *Slaughter v. Commonwealth*, Ky., 744 S.W.2d 407, 411–12 (1987)).

■ We remain adamant that sentencing issues must not be raised prior to the penalty phase of trial as a means to impermissibly influence the jury to convict based on the desired penalty rather than on the elements of each given offense. However, there are legitimate and appropriate reasons to inform a venire of the range of penalties that it may be called upon to impose as well as rational and logical reasons to discuss the potential penalties in the context of a defendant's possible motivations during closing argument. The hard line laid out in *Carter* is unworkable in that its application unduly restricts the discussion of information that needs to be imparted during the jury selection process. Further, it is unnecessary in light of the protections provided by the Kentucky Rules of Evidence which allow for the introduction of evidence that is relevant and not unduly prejudicial. *See* KRE Chapter 4. We therefore overrule *Carter v. Commonwealth* insofar as it holds that sentencing information is always inadmissible during the guilt/innocence phase of the trial.

The next issue for our consideration concerns the trial court's ability to order a defendant's contempt sentence to run consecutively to a felony sentence. Following the jury's verdict of guilt on the burglary

754

charge, but prior to the PFO and sentencing phase of the trial, Appellant erupted in what he now modestly describes as an "emotional outburst." The trial judge held Appellant in contempt of court, initially sentencing him to thirty (30) days of incarceration, but when this, along with threats to shackle him, tape his mouth closed, and remove him from the courtroom failed to calm Appellant, the court ordered him to serve six months on the charge of contempt. In its final judgment, however, the court reduced the sentence for contempt to ninety (90) days, but ordered the sentence to run consecutively to the twenty (20) year burglary sentence.

Appellant argues the trial court impermissibly ordered the contempt conviction to run consecutively to his burglary sentence. Appellant's argument is as follows. Contempt is classified as a misdemeanor. *See Young v. Knight,* Ky., 329 S.W.2d 195, 199 (1959) (citing *Gordon v. Commonwealth,* 141 Ky. 461, 133 S.W. 206 (1911), and *Melton v. Commonwealth,* 160 Ky. 642, 170 S.W. 37 (1914)). A sentence for a misdemeanor conviction is classified as a definite sentence. KRS 532.090. A sentence for a felony conviction is classified as an indeterminate sentence. KRS 532.060. Pursuant to KRS 532.110(1)(a), "[a] definite and indeterminate term shall run concurrently and both sentences shall be satisfied by service of the indeterminate term." Thus, according to Appellant, a sentence for a misdemeanor conviction must run concurrently with any felony conviction.

The Commonwealth does not dispute Appellant's above analysis, but rather, argues an exception to the rule of KRS 532.110(1)(a) is found in KRS 533.060(3) which states:

When a person commits an offense while awaiting trial for another offense, and is subsequently convicted or enters a plea of guilty to the offense committed while awaiting trial, the sentence imposed for the offense committed while awaiting trial *shall not run concurrently* with

confinement for the offense for which the person is awaiting trial.

(Emphasis added.) The Commonwealth argues this statute is dispositive of the case at hand because Appellant was still "awaiting trial" on the PFO charges, and was "awaiting" the penalty phase of trial at the time he was held in contempt. According to the Commonwealth's interpretation of KRS 533.060(3), "awaiting trial" means "awaiting the completion of trial," and, therefore, when the defendant commits another offense at any point before final judgment, any sentence imposed for that second offense must be run consecutively with the sentence for the offense for which he is standing trial.

Naturally, the Appellant disagrees. He argues the term "awaiting trial" means "awaiting the commencement of trial," and thus, once the trial has begun, the defendant is no longer "awaiting" trial, but instead is participating in the trial, and is therefore not subject to mandatory consecutive sentencing as set forth in KRS 533.060(3). Although the precise meaning of "awaiting trial" is indeed an interesting issue, we need not resolve that question today, as we believe an entirely different and far more compelling reason exists to support the trial court's decision to order the contempt sentence to run consecutively with Appellant's burglary conviction.

The power of the courts to punish for contempt is an inherent power of the judiciary. *Arnett v. Meade,* Ky., 462 S.W.2d 940, 947 (1971). The general rule is that any legislation that hampers judicial action or interferes with the discharge of judicial functions is unconstitutional. *Id.* at 946.

The three branches of government are co-ordinate and yet each, within the administration of its own affairs, is supreme. The grant of the judicial power to the courts carries with it, as a necessary incident, the right to make that power effective in the administration of justice under the Constitution.

*Id.* (quoting *Burton v. Mayer*, 274 Ky. 263, 118 S.W.2d 547 (1938)). Accordingly, in *Arnett,* our predecessor court found unconstitutional a statute (KRS 421.140) which placed limits of $30 in fines and 24–hours' imprisonment on the power of the courts to punish for contempt. In *Woods v. Commonwealth,* Ky., 712 S.W.2d 363, 365 (1986), this Court revisited the issue and found an amended version of the same statute to likewise be unconstitutional. That version of the statute mandated that when a witness is held in contempt and imprisoned for refusing to testify or to be sworn, the final disposition of the case in which he so refused shall discharge him from imprisonment. The *Woods* court held a defendant could be required to serve the remainder of a five-month, twenty-nine-day sentence for contempt even after the trial in which he refused to testify had come to a conclusion.

■ Although we have stated that the legislature may put reasonable restrictions upon constitutional functions of the courts, provided that such restrictions do not defeat or materially impair the exercise of those functions, *Arnett,* 462 S.W.2d at 946, the restrictions imposed by the statute at issue in this case do not fall into that category. If we were to permit the KRS 532.110(1)(a) requirement of concurrent sentencing for definite and indeterminate terms to apply to sentences imposed for contempt of court, we have no doubt the requirement would materially limit the court's power of contempt. This we will not do. If the courts are to have the power to control participants in the judicial process and effectively administer justice, the power of contempt must be more than a hollow threat. As we stated in *Woods,* "[w]itnesses cannot be allowed to freely refuse requests of the court with the certainty that their penalty will be of limited duration." *Woods,* 712 S.W.2d at 365.

Similarly, if a defendant knows with certainty that any contempt conviction will simply be ordered to run concurrently with his felony sentence, the court's power of contempt is made meaningless.[1] If the courts are to have any real power to control the behavior of the defendants in their courtrooms, the power of contempt must carry with it a real punishment—the possibility of serving additional time imprisoned for contemptible behavior. Therefore, we hold that the KRS 532.110(1)(a) requirement of concurrent sentencing does not apply to terms imposed as punishment for contempt of court. Accordingly, the trial court did not err in ordering Appellant's contempt sentence of ninety (90) days to run consecutively to his sentence for burglary.

■ Lastly, Appellant argues the trial court erred when it deemed the ninety-day sentence for contempt to have been satisfied by deducting ninety days from the credit which Appellant would otherwise receive for time spent incarcerated prior to sentencing, thus giving Appellant 194 days toward his maximum term of imprisonment rather than 284. *See* KRS 532.120(3). The argument is one of semantics. It makes no difference if Appellant is credited with 284 days towards his term imprisonment on the burglary charge, and then is required to serve an additional 90 days for the contempt, or whether the contempt sentence is deemed satisfied by deducting 90 days from Appellant's time-served credits. The result is the same—pursuant to the trial court's order imposing consecutive sentences, Appellant will be required to serve 90 additional days of incarceration as a result of his unfortunate outburst.

As a final matter, we would note that, although we denied Appellant's "Motion for Leave to File Supplemental Citation of

1. For example, the Appellant here was clearly not a stranger to the criminal justice system, and when the trial judge first held Appellant in contempt, Appellant responded with contempt of his own: "Well, whatever. What you gonna do, give me 30 days on top of 10 years? Stick it … you ain't said nothing dude. What can you do? You can't jack no more than 30 [expletive deleted] years.…"

Authority" because it was untimely filed, we did indeed review every case and statute cited by Appellant in said motion, and remain unswayed in the result we reach today or the reasoning therefore.

For the reasons set forth above, Appellant's conviction and sentences are hereby affirmed.

All concur.