30 F.3d 134
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Harland Carl POLLARD, Petitioner-Appellee,
v.
Otie R. JONES, Respondent-Appellant.
 No. 93-6034.
 United States Court of Appeals, Sixth Circuit.
 July 22, 1994.
 
 Before: GUY and BOGGS, Circuit Judges; and WOODS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 The State of Tennessee appeals from the district court's grant of Harland Pollard's petition for a writ of habeas corpus. The only issue briefed by the parties is whether Pollard exhausted his state remedies before he filed his petition in federal court. Finding that Pollard has exhausted his state remedies, we affirm the district court's grant of the writ.
 
 
 2
 * In 1985, Pollard pleaded guilty to first degree murder of his wife, Jerre Pollard. According to the district court's opinion, Mrs. Pollard, a correctional officer, began an affair with a co-worker. Pollard learned of the affair after he found a note in his wife's handwriting reading "Greg Allen DeLong loves Jerre Pollard." Pollard confirmed that his wife was having an affair by calling Jerre's stepmother, who told him that Jerre and DeLong had spent the week together at her house.
 
 
 3
 Soon thereafter, the Pollards decided to separate. Jerre moved in with DeLong and his mother on March 13, 1985. Pollard went on an alcohol and valium spree that lasted six days. During this time, Pollard burned a television set that belonged to Jerre and killed three of her dogs.
 
 
 4
 Jerre made several trips to her former abode to collect belongings and clothes. On March 18, a friend heard Pollard say that he ought to kill Jerre because she made him so mad. On March 19, Jerre returned to Pollard's house and they fought over the burned television set. Jerre indicated that she was taking Pollard's stereo since Pollard had destroyed her property.
 
 
 5
 At some point, the argument turned violent. Pollard killed Jerre by stabbing her 12 times with a serrated survival knife. Pollard then apparently tried to kill himself by drinking Drano and stabbing himself with the survival knife. The police, responding to a 911 call, found him in this condition and took him to jail where he was questioned for three hours. Pollard confessed to the murder, claiming that he attacked Jerre with the knife after she started slapping him around. He also stated that Jerre did not have a weapon when she turned on him. Pollard was then taken to the hospital and treated for three stab wounds. Pollard later contended that the knife belonged to Jerre and that she attacked him with it.
 
 
 6
 Pollard was represented by an attorney at his preliminary hearing. For reasons unknown, the judge transferred Pollard from the local jail to the state penitentiary in Nashville. Pollard's attorney withdrew from the case because he did not want to commute from Sparta, Tennesse, where his office was located, to Nashville to confer with Pollard. Pollard was then transferred to an institute for the criminally insane and held there on a "suicide watch." He was later sent back to the penitentiary. While there, he met a death row inmate, Ron Harries, who suggested that Pollard hire the Nashville law firm of Lionel Barrett and Richard McGee.
 
 
 7
 Pollard's family hired McGee for $7,500. Pollard provided McGee with a list of witnesses who could verify Jerre's affair with DeLong. McGee did not interview any of the witnesses. He did not follow up on leads that indicated that Pollard was intoxicated at the time of the murder. Nor did he follow up on leads that indicated that Jerre had violent propensities and was wont to carry a survival knife similar to the one that Pollard used. During the course of his investigation, McGee also learned that the State would attempt to prove malice on Pollard's part by showing that Pollard burned the television, killed three of Jerre's dogs, and cut off the head of Jerre's favorite dog, put it on a spike, and placed it by the side of the road where Jerre would see it. McGee apparently did not investigate this allegation, either. However, he did file several motions, including a motion to suppress evidence, but there were no hearings on these motions, presumably because Pollard pleaded guilty.
 
 
 8
 The State offered Pollard a life sentence if he pleaded guilty. When Pollard refused, the State indicated that it would seek the death penalty. McGee urged Pollard to plead guilty, telling him that he could be released on parole, early release, or by executive clemency. McGee also promised Pollard's family that if he pleaded guilty, McGee could guarantee that Pollard would be out in seven years, at the latest. McGee also persuaded Pollard's relatives to help him convince Pollard to plead guilty. McGee showed Pollard's relatives pictures of Jerre's body and told them that the jury would give Pollard the death sentence if they saw the photographs.
 
 
 9
 On November 4, 1985, Pollard pleaded guilty to murder in the first degree. When the judge asked Pollard if he understood what rights he was giving up by pleading guilty, Pollard replied that he did not want to "gamble with the death penalty" and that he would "rather take this chance." Pollard was sentenced to life imprisonment. He filed a petition for post-conviction relief in state court in March 1989.[1] Pollard then filed a federal habeas corpus petition in June 1990, alleging that "almost fifteen (15) months ha[d] elapsed since the date of the original [state] filing, and [he] had not been appointed counsel, nor ... received a hearing on the issues presented [in his state post-conviction petition.][2] In October 1991, the district court found that Pollard had constructively exhausted his state remedies since the state courts had refused to act on his petitions. In December 1990, the state trial court denied Pollard's post-conviction petition. Pollard then timely appealed the state court's decision. Nearly eighteen months later, on June 11, 1993, the state appellate court rejected Pollard's appeal.
 
 
 10
 Meanwhile, the federal district court referred the case to a magistrate judge for further proceedings. The magistrate judge recommended that Pollard's petition be denied. The district court, however, disagreed and granted Pollard's petition for a writ of habeas corpus on June 30, 1993, 19 days after the state appellate court rejected Pollard's post-conviction petition. The district court found that the "chance" to which Pollard referred in the plea proceeding was the chance that he would receive clemency. The district court also concluded that McGee's performance did not meet the standard for effective assistance of counsel.
 
 
 11
 In its notice of appeal, the State appealed from the district court's order granting the habeas corpus petition. In its brief, however, the State argued only that the district court erred in holding that Pollard had exhausted his state remedies. Pollard contends that even if the district court erred on this issue, it is a moot question since the state courts have now rejected his post-conviction motions.
 
 II
 
 12
 The State argues that the district court erred when it found that Pollard had "constructively" exhausted his state remedies. For reasons of comity, a federal court will not hear a habeas corpus petition unless the petitioner has exhausted his state remedies. Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982).
 
 
 13
 The forbearance required of the federal courts is "based on the assumption that the state remedies available to petitioner are adequate and effective to vindicate federal constitutional rights. When those state procedures become ineffective or inadequate, the foundation of the exhaustion requirement is undercut and the federal courts may take action."
 
 
 14
 Workman v. Tate, 957 F.2d 1339, 1344 (6th Cir.1992) (quoting Shelton v. Heard, 696 F.2d 1127, 1128 (5th Cir.1983)). A writ shall not be granted unless there exist "circumstances rendering [the state remedy] process ineffective to protect the rights of the prisoner." 28 U.S.C. Sec. 2254(b). "Inordinate delay in adjudicating state court claims can be such a circumstance[.]" Workman, 957 F.2d at 1344. "Determining whether such special circumstances exist is a factual appraisal for the trial court to decide[.]" Chitwood v. Dowd, 889 F.2d 781, 784 (8th Cir.1989), cert. denied, 495 U.S. 953, 110 S.Ct. 2219 (1990). The district court's findings of fact, including the exhaustion of state remedies, in federal habeas corpus proceedings are reviewed for clear error. Carter v. Sowders, 5 F.3d 975, 978 (6th Cir.1993), cert. denied, 114 S.Ct. 1867 (1994).
 
 
 15
 In Workman, we granted a petition for a writ of habeas corpus even though the petitioner had not exhausted his state remedies. In July 1987, Workman filed a petition for post-conviction relief in a state court of common pleas. The court, without conducting a hearing, dismissed the petition with a one-sentence order. In April 1988, the state court of appeals remanded Workman's petition to the court of common pleas for findings of fact and conclusions of law. In August 1988, 13 months after filing his state petition, Workman filed a petition for a writ of habeas corpus in federal court. 957 F.2d at 1342. The district court granted the petition. We upheld the district court's decision, finding that the state's reasons for the delay--turnover of judges and dispersement of caseloads--was an inadequate excuse. Id. at 1344.
 
 
 16
 The delay in Pollard's case is comparable to the delay in Workman and the district court's finding of exhaustion of Pollard's state remedies is not clearly erroneous. Here, the district court found that no action had been taken on Pollard's petition except for the appointment of counsel in February 1990 and the dismissal of the petition in December 1990. Despite Pollard's repeated attempts to discover the status of his appeal, he did not learn that counsel had been appointed to represent him until July 1990, a full month after he had filed his federal habeas appeal and over 15 months after he had filed his petition for post-conviction relief. Finally, unlike Workman, on appeal the State has not offered a reason for the delay.[3]
 
 
 17
 Even if we were to find that Pollard should have exhausted his state remedies before filing his federal petition, we still would not dismiss Pollard's petition. In Matlock v. Rose, 731 F.2d 1236, 1240 (6th Cir.1984), cert. denied, 470 U.S. 1050, 105 S.Ct. 1747 (1985), we held that
 
 
 18
 the total exhaustion rule fosters three beneficial results. First, it encourages state prisoners to seek full relief from the state courts. Second, federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record. Finally, the rule promotes federal judicial economy. The federal burden will be lightened because the district court will be more likely to review all of the petitioner's claims in a single proceeding.
 
 
 19
 Id. at 1240 (citations and internal quotation marks omitted). Where a state has foreclosed corrective procedures, "none of these beneficial results are furthered by requiring the petitioner to return to state court." Id. In this case, a dismissal of Pollard's petition will not further any of the Matlock criteria. First, Pollard sought full relief from the state court but was unable to consult with counsel or obtain an evidentiary hearing in that court until after he filed his federal habeas petition. Second, the district court had a complete factual record before it when it decided the merits of the petition.[4] Third, federal judicial economy is not hindered by allowing the federal court to consider this case since Pollard has, in fact, now exhausted his state remedies.
 
 
 20
 For the first time on appeal, the State suggests that if Pollard's petition is dismissed, the district court will not invariably reach the same result. The State argues that the district court's standard of review is now different because Pollard defaulted by failing to appeal the Court of Criminal Appeals's June 11, 1993 denial of his post-conviction petition.[5] As the State correctly points out, a procedural default requires a petitioner to show that there was cause for the default and actual prejudice. Coleman v. Thompson, 501 U.S. 722, ----, 111 S.Ct. 2546, 2565 (1991). To establish cause, a petitioner must show that some objective factor external to his efforts prevented compliance with the state procedural rule. McCleskey v. Zant, 499 U.S. 467, 493, 111 S.Ct. 1454, 1470 (1991). To show prejudice, "[t]he habeas petitioner must show 'not merely that the errors ... created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting [the entire process] with error of constitutional dimensions.' " Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648 (1986) (quoting United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596 (1982)).
 
 
 21
 Although the standard would change if we were to dismiss this petition, we do not believe that the result would change. In this case, at the time Pollard should have filed an appeal to the Tennessee Supreme Court, 18 months had passed since the federal district court determined that Pollard had exhausted his state remedies. Moreover, the federal court had already granted the writ of habeas corpus prior to the running of the time for appealing the state decision. Considering these unusual circumstances, that a federal court was not only considering his case, but had already granted the relief he sought, we believe that Pollard could establish cause for his procedural default. As for establishing actual prejudice, the record suggests, and the district court held, that the advice Pollard received about pleading guilty to first degree murder infected the state proceeding with an error of constitutional dimensions. Consequently, we believe it would be futile, and a waste of judicial resources, to dismiss Pollard's petition.
 
 
 22
 For these reasons, we AFFIRM the district court's decision to grant Pollard's writ of habeas corpus.
 
 
 
 *
 The Honorable George E. Woods, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Pollard also filed a state habeas corpus petition in Van Buren County Circuit Court in April 1990. The record does not indicate whether the state court has acted upon this petition. The status of his state habeas petition, however, is immaterial to this appeal: the State does not claim that Pollard should have exhausted all state remedies and we have no reason to believe that the state habeas corpus petition, which was filed in the same court as the post-conviction petition and which raised the same issues, will be granted. Cf. Workman v. Tate, 957 F.2d 1339, 1344 (6th Cir.1992)
 
 
 [2]
 The district court found, however, that counsel had, in fact, been appointed to represent Pollard in February 1990. Both the State and Pollard agree that this attorney did not contact Pollard until July 18, 1990
 
 
 [3]
 The State did offer a reason for the delay in the court below, however. In its Motion to Dismiss, the State argued that "[t]he administration of a case of this magnitude cannot be accomplished in the same time required of smaller cases.... The sheer volume of the pleadings [170 pages] requires additional time for appointed counsel to frame the issues and draft the appropriate amendment."
 However true this may be, this explanation is insufficient to outweigh the facts that no visible state action had been taken when Pollard filed in federal court, that nearly a year elapsed before the court appointed counsel for Pollard, and that nearly five additional months elapsed before the appointed counsel contacted Pollard.
 
 
 [4]
 We need not concern ourselves further with the factual record since the State has chosen not to appeal this case on the merits
 
 
 [5]
 In fact, Pollard filed an appeal to the Tennessee Supreme Court on August 12, 1993. This discretionary petition was dismissed on November 8, 1993. Since the Tennessee procedural rules require a petitioner for discretionary review to file an appeal within 30 days of the appellate decision, Pollard's petition was dismissed as untimely. See Tenn.R.App.P. 11(b)