COMMONWEALTH of Kentucky,
Petitioner,

v.

Gregory Ross PHILPOTT, Respondent.

No. 2000–SC–0833–CL.

Supreme Court of Kentucky.

May 16, 2002.

Shawn C. Goodpaster, Special Assistant Attorney General, Louisville, Counsel for Petitioner.

Daniel T. Goyette, J. David Niehaus, Stephen Keller, Louisville, Counsel for Respondent.

COOPER, Justice.

Gregory Ross Philpott was indicted by a Jefferson County grand jury on a charge of burglary in the first degree, a Class B felony, KRS 511.020, for which the maximum penalty is twenty years in prison and a $10,000.00 fine. KRS 532.060(2)(b); KRS 534.030(1). Following a trial by jury, Philpott was convicted of assault in the fourth degree under extreme emotional disturbance, a Class B misdemeanor, KRS 508.030 and KRS 508.040, and sentenced to the maximum penalty for that offense, ninety days in jail and a $250.00 fine. KRS 532.090; KRS 534.040(2)(b).

The factual premise for the indictment was that Philpott, with the intent to commit a crime, knowingly entered or remained unlawfully in a residence and, while in the residence, assaulted and physically injured Mary Malone who was not a participant in the crime. KRS 511.020(1)(b). The trial judge instructed the jury on the principal offense, burglary in the first degree, and on three possible lesser included offenses: (1) criminal trespass in the first degree; (2) assault in the fourth degree; and (3) assault in the fourth degree under extreme emotional disturbance. The latter three offenses are misdemeanors. KRS 511.060(2); KRS 508.030(2); KRS 508.040(2)(b). The guilt phase instructions directed the jury as follows upon a finding of guilt of one of the four possible offenses:

Instruction No. 1: If guilty of burglary in the first degree, "[y]ou shall say so by your verdict and no more."

Instruction Nos. 2 and 3: If guilty of criminal trespass in the first degree or assault in the fourth degree, "[y]ou shall fix his punishment at confinement in the

County Jail for a period not to exceed twelve (12) months, at a fine not to exceed $500.00, or at both confinement and fine, in your discretion."

Instruction No. 4: If guilty of assault in the fourth degree under extreme emotional disturbance, "[y]ou shall fix his punishment at confinement in the County Jail for a period not to exceed ninety (90) days, at a fine not to exceed $250.00, or at both confinement and fine, in your discretion."

■ Thus, the instructions directed the jury not to set a penalty if Philpott was found guilty of the principal felony offense but to set a penalty if he was found guilty of one of the lesser included misdemeanor offenses. As noted above, the jury found Philpott guilty of assault in the fourth degree under extreme emotional disturbance and sentenced him to confinement for ninety days and a $250.00 fine. Since the jury returned its penalty verdict concurrently with its guilty verdict, there was no penalty phase of the trial. We granted the Commonwealth's motion to certify the law with respect to the following issue:

WHETHER THE "TRUTH–IN–SENTENCING" STATUTE, KRS 532.055(1) MANDATES THAT A JURY CANNOT BE ADVISED OF MISDEMEANOR SENTENCING INFORMATION DURING THE GUILT PHASE OF A FELONY TRIAL?

Ky. Const. § 115; CR 76.37.

KRS 532.055(1) provides:

In all felony cases, the jury in its initial verdict will make a determination of not guilty, guilty, guilty but mentally ill, or not guilty by virtue of insanity, and no more.

Prior to January 1, 1975, there were no bifurcated criminal trials in Kentucky and all verdicts were rendered pursuant to RCr 9.84(1):

When the jury returns a verdict of guilty it shall fix the degree of the offense and the penalty . . . .

See *e.g., Ingram v. Commonwealth,* Ky., 427 S.W.2d 815, 818 (1968), and *Wilson v. Commonwealth,* Ky., 403 S.W.2d 705, 708–09, (1966), rejecting arguments that introduction during the trial of the primary offense of evidence of prior convictions supporting an enhanced penalty under the Habitual Criminal Act, KRS 431.190 (repealed 1974 Ky. Acts, ch. 406, § 336, eff. January 1, 1975), denied a defendant his/her Fifth Amendment right to Due Process of Law and Sixth Amendment right to trial by an impartial jury. The original version of the Kentucky Penal Code retained this practice for trials of accused persistent felony offenders. 1972 Ky. Acts, ch. 385, § 267. However, the effective date of the 1972 version of the Code was July 1, 1974, *id.,* § 307, and the 1974 General Assembly amended that provision so that what is now KRS 532.080(1) provides for a bifurcated procedure at which sentencing and evidence of prior convictions are reserved to a second, penalty phase of the trial. 1974 Ky. Acts, ch. 406, § 280, eff. January 1, 1975. Likewise, when the General Assembly reinstated the death penalty in Kentucky, it provided for a bifurcated trial in which sentencing information was reserved to a second, penalty phase of the trial. KRS 532.025(1) (1976 Ky. Acts (ex. sess.), ch. 15, § 2). Despite the fact that Section 116 of the Kentucky Constitution vests the Supreme Court with all power over rules of practice and procedure and that Section 28 forbids the exercise by one branch of government of powers belonging to either of the other branches, neither KRS 532.080(1) nor KRS 532.025(1) was subjected to a Constitutional challenge on that basis.

The so-called "truth-in-sentencing" statute, KRS 532.055, was literally drafted overnight and enacted the next day in re-

sponse to a public outcry over the failure of a petit jury to sentence George Wade to death for the robberies and murders of two Jefferson County teenagers.[1] 1986 Ky. Acts, ch. 358, § 2. Like KRS 532.080(1) and KRS 532.025(1), KRS 532.055(2) provides for a bifurcated trial in which the jury determines the appropriate penalty within the ranges specified by law after being furnished with previously inadmissible evidence regarding the number and nature of the defendant's prior criminal convictions and parole eligibility information. In *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987), the statute was deemed to be legislation concerning practice and procedure and, thus, a violation of Section 28. *Id.* at 796. However, we decided to accept the provisions of the statute as a matter of comity, subject to the Court's right under Section 116 to preempt its provisions by promulgation of different rules of procedure when and if necessary. *Id.* at 798.

▇▇▇ Philpott argues that KRS 532.055(1) has no application to the trial of a misdemeanor, and, thus, it was proper to apply RCr 9.84(1) to the instructions on the lesser included misdemeanor offenses. We disagree. There are three circumstances in which a defendant can be convicted of a misdemeanor: (1) in district court when the defendant is charged only with one or more misdemeanor offenses, KRS 24A.110(2); (2) in circuit court when a misdemeanor charge is joined in an indictment with a felony, *id.*, RCr 6.18, *Keller v. Commonwealth*, Ky., 594 S.W.2d 589 (1980); and (3) in circuit court when the defendant is indicted for a felony offense but convicted, as here, of a lesser included misdemeanor offense. *Cf. Commonwealth v. Adkins*, Ky., 29 S.W.3d 793 (2000). KRS 532.055(1) applies to "all felony

cases" in circuit court. Instructing the jury on a lesser included misdemeanor offense does not transform a felony case into a misdemeanor case. That does not occur until and unless a verdict is returned convicting the defendant of the misdemeanor offense and thereby acquitting him/her of the felony offense. *Ergo,* the trial is still a felony case at the time the guilt phase instructions are read to the jury.

KRS 532.055 does not purport to limit the type of evidence admissible during the guilt phase of a criminal trial. Nevertheless, such has been the subject of most of the post-*Reneer* litigation with respect to that statute. *Clay v. Commonwealth,* Ky., 818 S.W.2d 264 (1991), *cert. denied,* 503 U.S. 923, 112 S.Ct. 1304, 117 L.Ed.2d 525 (1992), held that because KRS 532.055 now permits bifurcated trials of felony cases, evidence of prior convictions introduced for the purpose of enhancing an underlying felony offense to an offense of a higher degree is no longer admissible during the guilt phase of the trial but must be reserved for the penalty phase. That principle has subsequently been extended to any case in which the prosecution seeks to introduce a prior conviction for the purpose of imposing an enhanced sentence, even if the enhancement would result only in a more severe misdemeanor sentence, thus requiring bifurcation of some misdemeanor trials. *Dedic v. Commonwealth,* Ky., 920 S.W.2d 878 (1996); *O'Bryan v. Commonwealth,* Ky., 920 S.W.2d 529 (1996); *Commonwealth v. Ramsey,* Ky., 920 S.W.2d 526 (1996).

In *Carter v. Commonwealth,* Ky., 782 S.W.2d 597 (1990), *cert. denied,* 497 U.S. 1029, 110 S.Ct. 3282, 111 L.Ed.2d 791 (1990), the jury initially returned inconsistent verdicts finding the defendant guilty

---

1. For factual details, see *Taylor v. Commonwealth,* Ky., 821 S.W.2d 72 (1990), *cert. de-* nied, 502 U.S. 1100, 112 S.Ct. 1185, 117 L.Ed.2d 428 (1992).

of both the primary offense of trafficking in a controlled substance and the lesser included offense of possession of a controlled substance. The trial judge explained to the jury the difference between the two offenses and "presumably" informed them that the offense of trafficking carried a more severe penalty than the offense of possession. After further deliberations, the jury returned a verdict convicting the defendant of the more serious trafficking offense. Though finding the error harmless, the Court in *Carter* agreed with the defendant's assertion "that telling the jury sentencing information during the guilt/innocence phase of the trial violated the statutory process of a bifurcated trial as set forth in the new truth-in-sentencing statute, KRS 532.055, and thereby denied him due process of law." *Id.* at 601. The issue then became whether *Carter* precluded the introduction of *any* sentencing information during the guilt phase of a trial and, if so, how the parties could conduct a meaningful *voir dire* so as to ascertain whether individual prospective jurors could consider the full range of penalties. *Shields v. Commonwealth,* Ky., 812 S.W.2d 152 (1991), *cert. denied,* 502 U.S. 1065, 112 S.Ct. 953, 117 L.Ed.2d 121 (1992). We recently surveyed the evolution of our case law on this subject in both *Norton v. Commonwealth,* Ky., 37 S.W.3d 750 (2001), and *Lawson v. Commonwealth,* Ky., 53 S.W.3d 534 (2001). Without repeating the issues and holdings of all of the relevant cases, suffice it to say that the principle stated in *Carter* has been modified to permit meaningful *voir dire, Lawson,* and the introduction of relevant evidence, *Norton,* during the guilt phase of a criminal trial, but otherwise remains intact.

■ *Lawson* holds that meaningful *voir dire* requires that the jury be informed of the penalty range of the indicted offense(s) but not of enhanced or lesser included offenses. Thus, the penalty range information furnished to the jury by the instructions in this case would not be cumulative to information furnished during *voir dire.* Nor does Philpott suggest how evidence of the penalty ranges of lesser included misdemeanors, but not of the primary felony offense, would be relevant to his guilt or innocence. In fact, such would more likely confuse the jury into believing that a penalty would be imposed only upon conviction of a misdemeanor offense. Regardless, in addition to authorizing the jury to render a verdict contrary to the mandate of KRS 532.055(1), the instructions in this case furnished sentencing information to the jury during the guilt phase of the trial contrary to the principle stated in *Carter, supra.*

■ We hold now that in the trial of a "felony case," *i.e.,* any trial in which a jury could return a verdict of guilty of a felony offense, the jury shall not be instructed on the penalty ranges of any offense, whether the primary or a lesser included offense. If, upon the conclusion of such a trial, the jury returns a verdict of guilty of a lesser included misdemeanor offense, no additional evidence shall be admitted, the jury shall immediately be instructed on the penalty range for that offense, and the attorneys shall be allowed additional argument only on the issue of punishment, following which the jury shall retire to deliberate its verdict on that issue. If, upon the conclusion of the trial of a multi-count indictment, the jury returns verdicts finding the defendant guilty of both felony and misdemeanor offenses, and if either of the parties intends to offer evidence pursuant to KRS 532.055(2), the procedure described in the preceding sentence shall first be followed with respect to the misdemeanor convictions, after which the procedure described in KRS 532.055(2) and (3) shall be followed with respect to the felony

convictions. *Newton v. Commonwealth,* Ky.App., 760 S.W.2d 100 (1988); *cf. Francis v. Commonwealth,* Ky., 752 S.W.2d 309 (1988); Cooper, 1 *Kentucky Instructions to Juries (Criminal)* § 12.01A—12.03 (Comment) (4th ed. Anderson 1993).

The law is so certified.

GRAVES, JOHNSTONE, STUMBO and WINTERSHEIMER, JJ., concur.

KELLER, J., concurs by separate opinion, with LAMBERT, C.J., joining that concurring opinion.

KELLER, Justice, Concurring.

I wholeheartedly agree with the majority opinion to the extent that it addresses the issue certified and concludes that, in felony cases, the trial court's guilt/innocence phase jury instructions shall not inform the jury "on the penalty ranges of any offense, whether the primary or a lesser included offense." [1] I write separately, however, because I disagree with the procedures outlined by the majority for circuit courts to follow in cases where a jury returns a verdict finding a defendant guilty of one (1) or more misdemeanor offenses. While the majority perpetuates a system that requires jurors to determine penalties for misdemeanor offenses "in a vacuum," [2] I believe the time has come for the Court to follow the lead of the forward-thinking trial judge in *Newton v.*

*Commonwealth* [3] and permit juries in all criminal cases to consider relevant sentencing information before determining an appropriate penalty.

To impose an appropriate sentence for any criminal offense, whether a felony, misdemeanor, or violation, judges *and* jurors need to consider not only information concerning the character of the offense, but also relevant information about the defendant. While the Kentucky Penal Code requires the preparation of a Presentence Investigation Report (PSI) only in non-capital felony cases, [4] I am confident that a majority of Kentucky's circuit judges regularly order a PSI before imposing a misdemeanor sentence as well—and for a good reason. Before imposing a sentence of imprisonment, regardless of whether it is for a felony or misdemeanor conviction, trial judges must first "consider probation, probation with an alternative sentencing plan, or conditional discharge" [5] by giving "due consideration [to] the nature and circumstances of the crime *and the history, character, and condition of the defendant.*" [6] While the sentencing judge may possess information regarding the circumstances of the offense—especially in those cases where the conviction resulted from a trial—the PSI report provides circuit judges with information that permits them to make an informed sentencing deci-

---

1. Majority Opinion, 75 S.W.3d 209 at 213 (2002).

2. *Commonwealth v. Reneer,* Ky., 734 S.W.2d 794, 797 (1987).

3. Ky.App., 760 S.W.2d 100 (1988). Careful readers will observe that the trial judge in *Newton* and the author of this dissenting opinion are one and the same.

4. KRS 532.050(1) ("No court shall impose sentence for conviction of a *felony,* other than a capital offense, without first ordering a pre-

sentence investigation after conviction and giving due consideration to a written report of the investigation."); *Bell v. Commonwealth,* Ky.App., 566 S.W.2d 785, 787 (1978) ("We do not conclude that the trial court has an obligation to provide pre-sentencing reports in misdemeanor cases as it is required to provide in felony cases . . . .").

5. KRS 533.010(2); *Bell v. Commonwealth, supra* note 4 at 787. .

6. *Id.* (emphasis added).

sion by considering "the history, character, and condition of the defendant."

Similarly, as long as we continue to charge jurors with the task of determining appropriate sentences in criminal cases,[7] I believe we should provide them with the information necessary to fulfill that function by allowing them to consider relevant sentencing information about the history, character, and condition of the defendant. When addressing the constitutionality of the Truth–in–Sentencing Act in *Commonwealth v. Reneer*,[8] this Court recognized that jurors require information concerning a defendant's past criminal record and other matters in order to make an informed sentencing decision:

> The fact that the jury must deliberate once on the issue of guilt or innocence, and if guilty, must hear further evidence and deliberate again upon the assessment of penalty, will doubtless consume additional time in the trial process. Offset against this is the fact that the jury, in the sentencing phase, will be able to hear much evidence relevant to sentencing which it is not now permitted to hear.

One of the chief deficiencies in our present procedure is that, after reaching a verdict of guilt, the jury is required to sentence in a vacuum without any knowledge of the defendant's past criminal record or other matters that might be pertinent to consider in the assessment of an appropriate penalty. *On balance, the inconvenience of a bifurcated trial is a small price to pay for a better informed sentencing process.*[9]

The soundness of the *Reneer* Court's reasoning as to the benefit of Truth–in–Sentencing information would appear to apply with equal force to sentencing in any criminal case. I can neither find nor imagine any persuasive justification for this Court to sanction less informed sentencing decisions in non-felony criminal trials than it does in felony criminal trials. In fact, *Reneer*'s reasoning is even more persuasive now than it was when it was rendered because the Court's concern that bifurcated proceedings may become burdensome for trial courts, while perhaps well-founded at the time, simply did not materialize in actual practice.[10]

7. In my opinion, the question of court versus jury sentencing may again be ripe for discussion. *See Commonwealth v. Reneer, supra* note 2 at 798 ("It has been argued that judge sentencing lends itself to more uniform sentencing, and this court has, in the past, given consideration to adopting such a rule. We have not done so *as yet* ...." (emphasis added)). The opinion I express in this dissent is that, if the Court continues to employ jury sentencing in criminal cases, it should strive to make juries' determinations as informed as possible.

8. *Supra* note 2.

9. *Commonwealth v. Reneer, supra* note 2 at 797 (emphasis added).

10. *See Dedic v. Commonwealth*, Ky., 920 S.W.2d 878, 879 (1996) ("As has been shown in felony proceedings, the bifurcation will not impose a heavy administrative burden on the

courts or the prosecution."). Additionally, from my own experience of presiding in countless trials for a decade prior to Truth–in–Sentencing and almost twelve (12) years after the enactment of KRS 532.055, it is my opinion that bifurcated proceedings not only did not lengthen the proceedings, but actually expedited them and saved time. First, my experience—as well as anecdotal reports—suggests to me that, prior to Truth–in–Sentencing, jury deliberations were often extended because jurors were asked to fix an appropriate sentence but provided no information with which to do so. Juries would often find that they could reach a unanimous verdict of guilty without much trouble, but had to deliberate for a longer period of time as ·to the penalty. In many ways, this is unsurprising because it mirrors situations each of us encounters in everyday life; it is simply difficult to make a decision without sufficient information. Given the gravity of the decision jurors

Since the adoption of the Judicial Article and the concomitant vesting of exclusive jurisdiction in the Supreme Court to prescribe "rules of practice and procedure for the Court of Justice," [11] this Court has never rendered an opinion holding that bifurcation is inappropriate in non-felony criminal trials. While the Court of Appeals did so in *Newton*, the subject remains a question of first impression for this Court.[12] In *Newton*, the Court of Appeals expressed its opinion that Truth-in–Sentencing type evidence was irrelevant to a jury's determination of an appropriate misdemeanor sentence:

> Even assuming that the rules of procedure would not absolutely prohibit a court sua sponte from adopting a bifurcated procedure in any criminal trial, once the defendant has been found guilty of only a misdemeanor, evidence of his prior criminal record or character would not then be admissible in a case such as we have here for the simple reason that the evidence would not be relevant. It has long been the policy in this jurisdiction that the punishment in a misdemeanor case is "graded by the enormity of the offense." The punish-

ment inflicted "should be commensurate with the wrong done ... to the public." Simply put, the general policy has been, and is, that in misdemeanor cases the punishment a jury sets is not to be based upon a defendant's character but the character of his offense; the punishment must fit the offense rather than the particular offender. There are sound reasons for changing this policy in some instances and, indeed, the General Assembly has done so with respect to recidivists and certain misdemeanor offenses. There are equally sound practical reasons for maintaining the policy with respect to most misdemeanor offenses. Considering the relatively less grave subject matter of misdemeanor offenses and the necessity of lengthening the trials of these offenses to permit introduction of evidence to enhance and to mitigate sentence, it would seem that another burden would be added to an already burdened system without satisfying any demonstrated punitive or correctional need. This burden, however, would be infinitesimal when compared to that which would be imposed upon the

---

are asked to make—essentially, a determination of how long an individual should be deprived of his or her freedom—juror's sentencing decisions prior to Truth-in–Sentencing were difficult. Second, I found that, after Truth-in–Sentencing, in a number of cases if not a majority of them, defendants found guilty during the first phase of the trial would waive the separate sentencing hearing in exchange for a sentencing recommendation by the prosecuting attorney. Third, even in those cases where a Truth-in–Sentencing phase was conducted, the hearing consumed only a small amount of time and was certainly not "burdensome" upon either the trial court or the attorneys. Thus, at least from my perspective, the *Reneer* Court's fears did not materialize.

11. KY. CONST. § 116; *O'Bryan v. Hedgespeth*, Ky., 892 S.W.2d 571, 576 (1995) ("Ken-

tucky Constitution Section 116 vests exclusive jurisdiction in the Supreme Court to prescribe 'rules of practice and procedure for the Court of Justice.' Responsibility for deciding when evidence is relevant to an issue of fact which must be judicially determined[] ... falls squarely within the parameters of 'practice and procedure' assigned to the judicial branch by the separation of powers doctrine and Section 116.").

12. This Court considered, and denied, discretionary review in *Newton*. However, in doing so, we did not put our imprimatur on *Newton*'s holding. *See O'Bryan v. Hedgespeth*, Ky., 892 S.W.2d 571, 575 (1995) ("Denying discretionary review neither adopts the Court of Appeals' decision nor rejects it. Simply stated, it leaves the issue undecided at this level, albeit precedent for trial courts until such time as we should decide differently.").

district courts by the inevitable collateral attacks upon prior misdemeanor convictions which would be spawned were the existing policy changed.[13]

In light of Kentucky's sixteen (16) years of experience with Truth–in–Sentencing for felony offenses, I question the soundness of the reasons advanced by the *Newton* Court in support of its holding. First, while the general policy in the past was to reject such evidence, in both felony and misdemeanor cases, Truth–in–Sentencing for felony cases has shown the fallacy of this policy. I find it axiomatic that better-informed juries render more appropriate—and just—sentences. Second, any policy against bifurcation of criminal trials has been eroded since the time *Newton* was decided. Until the enactment of Truth–in–Sentencing, the only bifurcated trials in circuit court [14] were in capital cases [15] and felony cases where the defendant was eligible for sentencing as a persistent felony offender.[16] Now, in addition to capital trials, PFO proceedings, and Truth–in–Sentencing hearings in felony trials, this Court has mandated bifurcated proceedings in cases where a defendant's prior misdemeanor convictions may: (1) enhance the offense to a felony; [17] or (2) permit a more severe misdemeanor sentence.[18] Accordingly, this Court has recognized that, in

certain misdemeanor cases, sentencing information concerning prior convictions should be admitted at a separate penalty phase. And, as such, we have determined that misdemeanor punishments should not be determined solely by the character of the offense, and we have permitted juries to consider information relating to a defendant's prior criminal record under circumstances specified by this Court. Third, the notion that a misdemeanor is "relatively less grave" than a felony overlooks the fact that, because persons serving misdemeanor sentences do not earn so-called good time credit [19] and are ineligible for parole,[20] a defendant incarcerated under a lengthy misdemeanor sentence may actually serve an equivalent (or even longer) sentence than many Class D felons. In addition, misdemeanor sentences are typically served in regional or county jails without the freedom of movement, rehabilitative programs, and other opportunities available in state penal institutions. Fourth, as discussed in more depth above, experience with Truth–in–Sentencing has allayed previous concerns that bifurcated sentencing proceedings would burden trial courts and delay proceedings. Similarly, our experience with Truth–in–Sentencing in felony prosecutions disproves the *Newton* Court's hypothesis that bifurcation

---

13. *Newton v. Commonwealth, supra* note 3 at 102 (citations omitted).

14. *But see* former KRS 208.060(2) (repealed 1986 Ky. Acts ch. 423, sec. 198, eff. 7–1–87) (providing that district court juvenile proceedings shall consist of two (2) distinct hearings, an adjudication and a disposition). KRS 610.080 contains analogous provisions.

15. *See* KRS 532.025.

16. *See* KRS 532.080.

17. *Commonwealth v. Ramsey*, Ky., 27, 920 S.W.2d 526 (1996).

18. *Dedic v. Commonwealth, supra* note 10 at 879 ("In order to fulfill the legislative mandate of enhanced penalties for repeat DUI offenders and in accordance with our rule-making authority, this Court orders the District Courts to bifurcate *misdemeanor* DUI trials (footnotes omitted and emphasis added)").

19. KRS 197.045.

20. KRS 349.340(1); 501 KAR 1:030 § 3(a).

would spawn collateral attacks by persons convicted prior to bifurcated proceedings. Simply put, no rash of collateral attacks followed the enactment of Truth–in–Sentencing, and a policy change in misdemeanor cases would be even less likely to breed such challenges.

In summary, while I applaud the majority's decision mandating bifurcated trials of misdemeanor charges in circuit court, I would go one step forward and require sentencing bifurcation in all criminal trials to allow juries to consider relevant information about the character of the defendant before determining an appropriate sentence. The citizens of Kentucky have empowered and entrusted this Court with the authority "to prescribe rules ... of practice and procedure for the Court of Justice." Given the fact that this Court has already described bifurcated sentencing as "a better informed sentencing process,"[21] I can see no reason to limit that procedure to felony trials. Accordingly, I believe the time has come for this Court to further improve Kentucky's criminal justice system by extending bifurcated sentencing to all criminal trials.

LAMBERT, C.J., joins this concurring opinion.

---

21. *Commonwealth v. Reneer, supra* note 2 at 797.