Kenneth Bruce HOLBROOKS,
Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1997–SC–1005–DG.

Supreme Court of Kentucky.

Sept. 26, 2002.

As Modified Oct. 3, 2002.

David T. Eucker, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler, III, Attorney General, William L. Daniel, II, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

KELLER, Justice.

## I. INTRODUCTION

This Court accepted discretionary review of a Court of Appeals opinion affirming a Letcher Circuit Court judgment that sentenced Appellant to a five (5) year term of imprisonment following his conviction for First–Degree Perjury (KRS 523.020). At a previous trial under the same, single-count indictment, a jury had advised the trial court in writing that it agreed unanimously that Appellant was guilty not of the indicted felony offense, but of a misdemeanor offense, Second–Degree Perjury

(KRS 523.030). The first jury was unable to agree, however, as to an appropriate penalty. The trial court refused to accept the jury's finding as a verdict, subsequently declared a mistrial, and later empaneled a new jury to try the case. Appellant appeals from the judgment entered upon the second jury's verdict convicting Appellant of First–Degree Perjury. We hold that the first jury's verdict constituted a double jeopardy bar to Appellant's further prosecution under Letcher Circuit Court Indictment Number 94–CR–0023. Accordingly, we reverse the decision of the Court of Appeals and remand this matter to the trial court for it to vacate its judgment convicting Appellant of First–Degree Perjury and instead enter judgment in accordance with the first jury's verdict.

## II. FACTUAL BACKGROUND

When arrested on an unrelated felony charge, and using the assumed name of Roy Easterling, Appellant signed an affidavit of indigency[1] certifying his eligibility for representation by the Department of Public Advocacy. The Letcher County Grand Jury indicted Appellant for one (1) count of First–Degree Perjury for "falsely stating his name, under oath, in his affidavit of indigency, in violation of KRS 31.120 and KRS 523.020." The indictment also charged Appellant as a First–Degree Persistent Felony Offender (PFO).

Appellant was tried twice under this indictment. At the first trial, the trial court sent the jury to its deliberations with instructions and verdict forms allowing the jury to find the defendant: (1) not guilty of any offense; (2) guilty of the indicted offense of First–Degree Perjury; or (3) if the jury had reasonable doubts as to whether Appellant's false statement occurred in an official proceeding, guilty of

1. *See* KRS 31.120

the lesser-included offense of Second–Degree Perjury. Instruction Number Seven (7) provided that the jury's verdict "must be in writing, must be unanimous, and must be signed by one of you as foreperson."

The trial court's Second–Degree Perjury instruction informed the jury:

> If you find the Defendant guilty under this Instruction, you shall fix his punishment at confinement in the county jail for a period not to exceed 12 months, at a fine not to exceed $500.00, or at both confinement and fine, in your discretion.

The verdict form for Second–Degree Perjury required the jury to indicate:

> We the Jury do agree and find the defendant GUILTY of PERJURY IN THE SECOND (2ND) DEGREE, and fix his punishment at confinement in the county jail for _____ months, or a fine of $_____, or at both confinement and fine.

----

FOREPERSON

The jury did not indicate a jury verdict on the forms provided, but instead submitted a writing to the trial court that was signed by the jury foreperson:

> We the jury find the defendant guilty in the second degree of perjury. We cannot agree on punishment. We, the jury ask if Judge Wright will impose sentencing.
>
> /s/ Irene Seals
>
> Foreman

After bringing the jury into the courtroom and reading the jury's finding (characterized by the trial court as "the question") in open court, the trial judge informed the jury that "it is the jury's responsibility and job to impose sentence according to your findings, so I will be sending you back to the jury room for further deliberations." When the jury again returned deadlocked, the trial court instructed it in accordance with RCr 9.57 and, for a second time, asked the jury to retire for further deliberations. When the jury *again* returned to the courtroom and informed the trial court that it remained deadlocked as to sentencing, the trial court dismissed the jury, but did not declare a mistrial at that time. Approximately three (3) months later, the trial court denied Appellant's motion asking it to enter judgment on the jury's verdict finding Appellant guilty of Second–Degree Perjury and granted the Commonwealth's motion for a mistrial.

Approximately a week after the trial court entered its order declaring that the first trial ended with a hung jury mistrial, the trial court conducted a second jury trial under this indictment. At the second trial, the jury returned a verdict finding Appellant guilty of the felony offense of First–Degree Perjury. During the combined Truth–in–Sentencing/PFO phase, the trial court, on its own motion, amended Count Two in the indictment to reflect Second–Degree PFO status and instructed the jury in accordance with the amendment. After the defense completed its closing argument, the Commonwealth asked the Court to reconsider its ruling. The trial court reversed itself, "scrapped" its original PFO/Truth–in–Sentencing phase instructions, re-instructed the jury as to First–Degree PFO, and gave the defense an opportunity to re-present its closing argument. Defense counsel declined the opportunity. The jury's penalty phase verdict found Appellant subject to enhancement as a First–Degree PFO and recommended the maximum terms of imprisonment of five (5) years for the underlying offense and twenty (20) years following PFO-enhancement.

Prior to final sentencing, the trial judge recused himself from the case and a spe-

cial judge was appointed. The special judge vacated the First–Degree PFO conviction and sentenced Appellant to the five (5) year term of imprisonment which the jury had recommended on the underlying offense.

On direct appeal from the judgment of the Letcher Circuit Court, the Court of Appeals affirmed. Appellant sought discretionary review in this Court, which we granted on May 13, 1998. Appellant timely filed a brief, but this Court subsequently struck the brief on the Commonwealth's motion because the brief did not conform with CR 76.12. On October 9, 1998, this Court entered an order granting the Commonwealth's motion to dismiss the appeal after Appellant's counsel failed to file a brief. On September 17, 1999, however, the Court granted Appellant's pro se motion to reinstate the appeal. Now that both parties have filed their briefs, and the case has been orally argued, the matter is finally before this Court for a determination of the merits.

Appellant alleges that the trial court erred by: (1) conducting another trial under the indictment after the first jury found Appellant guilty of Second–Degree Perjury; (2) failing to direct a verdict of acquittal because Appellant's act of signing an affidavit using a false name was not "a material … statement … in any official proceeding"[2]; (3) incorrectly omitting materiality as an element of the offense in each of the perjury instructions; and (4) at the second trial, allowing the Commonwealth to introduce testimony, allegedly in violation of the KRE 503 Lawyer–Client Privilege, from the attorney appointed to represent Appellant as to the work he performed in connection with that representation. Because we hold that the trial court erroneously declared a mistrial following the first trial instead of entering judgment on the jury's Second–Degree Perjury verdict, however, we do not reach Appellant's allegations of error that relate only to First–Degree Perjury (i.e., the portion of Appellant's second argument concerning whether his false statement occurred in an official proceeding) or that concern evidence introduced only in the second trial (i.e., Appellant's fourth allegation of error). We address Appellant's remaining allegations of error.

## III.  ANALYSIS

### A.  DOUBLE JEOPARDY

Appellant argues that the trial court violated his state and federal constitutional protections against double jeopardy when it subjected him to retrial under Letcher Circuit Court Indictment No. 94–CR–0023 after jeopardy attached during his first trial. Appellant contends that the jury's finding—written (in language parallel to the trial court's verdict forms) and signed by a juror as foreperson, as required by the trial court's instructions—constituted a verdict convicting him of Second–Degree Perjury. Accordingly, Appellant argues that the trial court should have accepted the jury's "verdict" as to his guilt, and should have declared a mistrial only as to punishment. We agree with Appellant and hold that the trial court erred when it failed to enter judgment on the jury's verdict following the first trial and when it empaneled a second jury to deliberate Appellant's guilt.

◼  While the Commonwealth asserts that this error is not preserved for our review because Appellant did not appeal from the trial court's order declaring a mistrial and setting the case for trial, we observe that Appellant had no right to appeal from the interlocutory order declar-

**2.**  KRS 532.020(1).

ing a mistrial,[3] and that Appellant properly elected to appeal from a subsequent final judgment rather than pursue extraordinary relief in the form of a writ of prohibition.[4] Thus, we find no merit in the Commonwealth's argument concerning preservation.

The General Assembly has codified the fundamental double jeopardy principles relating to former prosecutions:

When a prosecution is for a violation of the same statutory provision and is based upon the same facts as a former prosecution, it is barred by the former prosecution under the following circumstances:

(1) The former prosecution resulted in:

(a) An acquittal, or

(b) A conviction which has not subsequently been set aside; or

. . .

(4) The former prosecution was improperly terminated after the first witness was sworn but before findings were rendered by a trier of fact. Termination under either of the following circumstances is not improper:

(a) The defendant expressly consents to the termination or by motion for mistrial or in some other manner waives the right to object to the termination; or

(b) The trial court, in exercise of its discretion, finds that the termination is manifestly necessary.[5]

■ The Commonwealth argues that what it refers to disparagingly as "the scrap of paper" did not constitute a "true verdict" because it did not satisfy the formalities required by rule and statute—i.e., it was not returned in open court,[6] the trial court did not "make inquiry of the jury as to whether [the writing was] their verdict," [7] and the trial court did not ask the parties if either of them wished the court to poll the members of the jury.[8] The Commentary to KRS 505.030, however, indicates that "[t]he existence of an 'acquittal' or a 'conviction', for purposes of this statute, should not be made to depend at all upon the formal entry of a judgment or order." [9] Here, the jury did everything within its power to communicate its verdict, and we thus find unpersuasive the Commonwealth's contention that the jury's written finding did not constitute a verdict because the trial court failed to recognize that finding as a verdict.

■ Alternatively, the Commonwealth argues that the jury's inability to agree on a penalty means that the jury failed to reach a "final verdict," and that the trial court thus correctly declared a mistrial. In support of this argument, the Commonwealth relies upon the pre-Truth-in-Sentencing case of *Commonwealth v. Crooks*,[10] in which we permitted Crooks's retrial on

3. *See* CR 54.01; *Macklin v. Ryan*, Ky., 672 S.W.2d 60, 61 (1984) ("Since a mistrial, by definition, does not dispose of the merits of a case or necessarily preclude future litigation, the appellant did not have an adequate remedy by appeal from the mistrial order.").

4. *St. Clair v. Roark*, Ky., 10 S.W.3d 482, 485 (2000) ("[A]lthough double jeopardy is an appropriate subject for a writ of prohibition, it is not mandatory that it be addressed in that context.").

5. KRS 505.030.

6. *See* RCr 9.82(1).

7. KRS 29A.320(3)(c).

8. KRS 29A.320(3)(d).

9. KRS 505.030, Official Commentary (Banks/Baldwin 1974).

10. Ky., 655 S.W.2d 475 (1983).

a PFO charge after the jury at his first trial unanimously agreed that Crooks was a First–Degree PFO, but could not agree upon a penalty.[11] The Commonwealth's argument in this case, however, rests on a recently-debunked myth concerning the correct procedure for assessing lesser-included misdemeanor penalties in felony cases. In *Commonwealth v. Philpott*,[12] we certified the law as to how Truth–in–Sentencing altered the procedure for jury instructions regarding the penalty ranges of lesser-included misdemeanor offenses in felony cases:

> [I]n the trial of a "felony case," *i.e.*, any trial in which a jury could return a verdict of guilty of a felony offense, the jury shall not be instructed on the penalty ranges of any offense, whether the primary or a lesser included offense. If, upon the conclusion of such a trial, the jury returns a verdict of guilty of a lesser included misdemeanor offense, no additional evidence shall be admitted, the jury shall immediately be instructed on the penalty range for that offense, and the attorneys shall be allowed additional arguments only on the issue of punishment, following which the jury shall retire to deliberate its verdict on that issue.[13]

The trial court's jury instructions erroneously required the jury, if it found Appellant guilty of the lesser-included misdemeanor offense, to set a penalty for that misdemeanor conviction during the same deliberations. However, in its self-created written verdict form, the jury returned a complete verdict as to the issue of Appellant's guilt by indicating that it found Appellant guilty of Second–Degree Perjury—and, therefore acquitted him of First–Degree Perjury.[14] Accordingly, KRS 505.030(1) prohibited Appellant's retrial under the same indictment, and the trial court erred when it empaneled another jury to determine Appellant's guilt. We thus reverse the Court of Appeals and remand this matter to the trial court for it to vacate the orders and judgments it erroneously entered upon its belief that the first jury's finding was incomplete.

Instead of declaring a mistrial and empaneling a new jury to deliberate Appellant's guilt under the indictment, the trial court should have entered judgment on the first jury's verdict. As to the question of sentencing, upon which the first jury *was* hung, the trial court should have proceeded as the first jury requested. The jury's written verdict indicated: "We cannot agree on punishment. We, the jury ask if Judge Wright will impose sentencing." Our Rules of Criminal Procedure provide that "the court may fix the penalty . . . (b) in cases where the court is otherwise authorized by law to fix the penalty."[15] And, the Truth–in–Sentencing Statute provides that:

> In the event that the jury is unable to agree as to the sentence or any portion thereof and so reports to the judge, the

11. *Id.* at 476.

12. Ky., 75 S.W.3d 209 (2002).

13. *Id.* at 213.

14. *See id.* at 212 ("Instructing the jury on a lesser included misdemeanor offense does not transform a felony case into a misdemeanor case. That does not occur until and unless a verdict is returned *convicting the defendant of the misdemeanor offense and thereby acquit-* *ting him/her of the felony offense.*" (emphasis added)). *See also Slaven v. Commonwealth*, Ky., 962 S.W.2d 845, 856 (1998) ("Although a lesser included offense is not a defense within the technical meaning of those terms as used in the penal code, it is, in fact and principle, a defense against the higher charge.").

15. RCr 9.84(1)

judge shall impose the sentence within the range provided elsewhere by law.[16] Because Appellant also argues that the trial court committed errors in the first trial that denied him due process of law, however, we must evaluate those allegations before we can ascertain the proper remedy in this case.

### B. MATERIALITY

Appellant raises two (2) allegations of error concerning the trial court's handling, during the first trial, of the issue as to whether Appellant's knowing adoption of another's name in connection with the affidavit of indigency constituted a "material false statement." Specifically, Appellant argues that the trial court erred when it: (1) failed to find Appellant's false statement regarding his identity immaterial as a matter of law and to direct a verdict of acquittal; and (2) failed to provide instructions requiring the jury to find beyond a reasonable doubt that Appellant's false statement was material. We find no error in the trial court's rulings.

We review Appellant's allegation of error concerning the sufficiency of the evidence under the often-quoted standard articulated in *Commonwealth v. Benham*,[17] "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable . . . to find guilt, only then is the defendant entitled to a directed verdict of acquittal." [18] We conclude that the trial court properly denied Appellant's motion for a directed verdict of acquittal after determining that Appellant's misrepresentation of his identity constituted a "material false statement."

KRS 523.010(1) defines a "material false statement" as "any false statement, regardless of its admissibility under the rules of evidence which could have affected the outcome of the proceeding." The Commentary to KRS 523.020 explains that the drafters of the Kentucky Penal Code intended a broad construction of "material":

What is traditionally a troublesome element of the offense of perjury, the requirement of materiality has been included in virtually every modern revision as an element of first degree perjury. . . . Although unduly narrow construction of the term has in many jurisdictions, impaired effective prosecution for perjury offenses, the rationale for retention of the requirement is that "a false answer to a trivial or irrelevant question will not usually hamper government and is unlikely to indicate antisocial propensities in the declarant." Such immaterial false statements should not be treated as constituting a serious crime.

In order to make the included requirement part of a practical and workable statutory scheme which is not overly restrictive to prosecution, the definition of materiality (KRS 523.020(1)) specifically includes all false statements which *could* have affected the outcome of the proceeding, regardless of the actual effect or admissibility of the statement. If the statement would tend to influence the course of the proceeding, the declarant is not exempt from criminal liability merely because he failed to object to the question on the basis of technical rules of evidence. This approach parallels the

---

16. KRS 532.055(4).

17. Ky., 816 S.W.2d 186 (1991).

18. *Id.* at 187. *See also Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3, 4–5 (1983) ("The clearly unreasonable test seems to be a higher standard for granting a directed verdict . . . constitut[ing] an appellate standard of review."); *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530, 533 (1977).

former requirement that the statement be relevant in some degree....[19]

In *Commonwealth v. Thurman*,[20] this Court explained that "[i]t is not necessary that testimony, to be material, must relate to the principal issue in a case. It is sufficiently material if it has the potential to influence a tribunal or a jury."[21]

Here, we believe that the trial court reasonably concluded that Appellant's false statement concerning his identity "could have affected the outcome of the proceeding." Although Appellant argues that the testimony at trial demonstrates the irrelevance of a person's identity in connection with determinations of eligibility for appointment of counsel, we believe the trial court properly concluded that a person's identity could influence the trial court's decision to appoint counsel—e.g., in a situation where the trial court is familiar with the assets of an individual known to the trial judge by reputation. Further, we agree with the Commonwealth that the issue of materiality extends beyond the issue of appointed counsel, and we recognize that Appellant's giving of a false name in connection with his affidavit of indigency could also have "affected the outcome of the proceeding" by influencing the criminal justice system's ability to ascertain accurately Appellant's criminal record—a factor relevant not only in courts' decisions as to pretrial release, but also the Commonwealth's decision whether to seek a PFO indictment. Accordingly, we believe the trial court properly denied Appellant's motion for a directed verdict of acquittal.

■ Likewise, we find no merit in Appellant's argument that the trial court's jury instructions should have defined "materiality" and required the jury to decide whether Appellant's false statement was material. KRS 523.010(1) specifically states that "Whether a falsification is material in a given factual situation is a question of law."[22] In *Commonwealth v. Stallard*,[23] we explained that trial courts, not juries, determine whether a statement is material:

> Whether a false statement is "material" in a given factual situation is a question of law to be resolved by determining, pursuant to KRS 523.010(1), whether the statement "could have affected the outcome of the proceeding." This Court is not inclined to establish a rigid or inflexible standard that *trial courts* must follow in deciding whether a "material false statement" has been made. Instead, that determination should, on a case by case basis, be left to the sound judgment of Kentucky's *trial court judges*.[24]

Thus, the trial court's Second–Degree Perjury instruction assigned the proper fact-finding role to the jury.

Because we find no reversible error in Appellant's first trial, we hold that upon remand the trial court should, in accordance with the discussion above in Part III(A) of this Opinion: (1) accept the first

**19.** KRS 523.020, Official Commentary (Banks/Baldwin 1974) (citations omitted).

**20.** Ky., 691 S.W.2d 213 (1985).

**21.** *Id.* at 215 (citing *May v. United States*, 280 F.2d 555, 562 (6th Cir.1960)). *See also Barkley v. Commonwealth*, Ky., 264 S.W.2d 297 (1954) ("It is usually sufficient to constitute perjury if the false statement is collaterally, remotely, or circumstantially material, or if it

has a legitimate tendency to prove or disprove some fact that is material, irrespective of the main fact in issue." (quoting 41 Am.Jur., § 13 (Perjury))).

**22.** KRS 523.010(1).

**23.** Ky., 958 S.W.2d 21 (1997).

**24.** *Id.* at 25 (emphasis added).

jury's verdict finding Appellant guilty of Second–Degree Perjury; (2) set a penalty for Appellant's conviction of Second–Degree Perjury as authorized by law;[25] and (3) impose a final judgment of conviction that reflects the first jury's verdict and the trial court's sentencing decision.

## IV. CONCLUSION

For the above reasons, we reverse the decision of the Court of Appeals and remand this matter to the Letcher Circuit Court for it to: (1) vacate the final judgment it entered on February 12, 1996 (following the second trial) imposing a five (5) year sentence for First–Degree Perjury; (2) vacate its order of October 24, 1994 "declaring a hung jury and mistrial of the [first] trial of this case"; (3) accept the first jury's verdict finding Appellant guilty of Second–Degree Perjury; (4) set an appropriate penalty for Second–Degree Perjury in accordance with KRS 532.055(5); and (5) enter a final judgment of conviction and sentence that reflects the first jury's verdict and the trial court's decision as to an appropriate sentence.

LAMBERT, C.J.; COOPER, GRAVES, JOHNSTONE and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the signing, under oath, of any affidavit of indigency constitutes an official proceeding as contemplated by KRS Chapter 523.

KRS 31.120(6), clearly states that the intent of the legislature is that a person who makes a false statement on an affidavit is subject to prosecution for first-degree perjury. Here, the evidence is undisputed that the truth was exposed rather than the falsity retracted. *See* KRS 523.090.

I would affirm the decision of the Court of Appeals and the circuit court.