RENDERED:  DECEMBER 6, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0166-MR

SCOTT MCDERMOTT                                                APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.          HONORABLE LUCY A. VANMETER, JUDGE
ACTION NO. 21-CR-00120

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, A. JONES, AND KAREM, JUDGES.

JONES, A., JUDGE:  Scott McDermott appeals from the judgment sentencing him to ten years' incarceration following his convictions at his jury trial.  Following our review of the facts and the law, we affirm.

## I. BACKGROUND

The incident in this case arose during the late afternoon of November 19, 2020, when police were conducting a seatbelt enforcement exercise ("Click it

or Ticket") in downtown Lexington. At one point during the exercise, a spotter noticed that the driver of a white GMC Envoy did not appear to be wearing his seatbelt, and Officer Justin Muravchick conducted a traffic stop of the vehicle. As Officer Muravchick approached, he detected a strong odor of marijuana wafting from the GMC. Believing the driver may be impaired, Officer Muravchick radioed for assistance. Two officers arrived, Sergeant Brandon Muravchick[1] and Officer Haley Patterson.

While the Muravchicks were conducting field sobriety tests on the driver, Officer Patterson was standing watch over the other two occupants of the vehicle. The appellant in this case, McDermott, was the sole occupant of the GMC's back seat. Officer Patterson noticed McDermott fidgeting and rummaging for objects in the pockets of his grey hooded sweatshirt, which caused her to ask McDermott to keep his hands where she could see them. Shortly thereafter, McDermott suddenly opened the rear passenger-side door and fled. Officer Patterson and several other officers pursued McDermott as he ran through several streets in downtown Lexington during the evening rush hour. Officer Patterson testified later regarding her belief that officers were in danger of being struck by vehicles during the pursuit.

---

[1] Sergeant Brandon Muravchick is Officer Justin Muravchick's brother. Both Muravchicks are police officers working for the Lexington Police Department.

McDermott was eventually apprehended by an officer on a motorcycle, who essentially just followed McDermott until he tired out and surrendered. When McDermott was searched, approximately $1,600.00 in cash was found on his person, along with his cell phone. In addition, police found McDermott's grey sweatshirt, which he had discarded at some point during the chase. Near the sweatshirt was a clear plastic bag containing eighty-four small blue pills. These pills were counterfeit pharmaceuticals meant to resemble Percocet, a medication containing oxycodone. Instead, the pills contained fentanyl, a significantly stronger opioid. Meanwhile, a search of the GMC uncovered approximately one hundred and ninety-five white rectangular tablets of counterfeit Xanax, along with a quantity of marijuana.

As a result of this incident, the Fayette County grand jury indicted McDermott on three counts: (1) first-degree trafficking in a controlled substance (fentanyl),[2] (2) first-degree fleeing or evading police (on foot),[3] and (3) being a first-degree persistent felony offender (PFO).[4] Notably, McDermott was not charged based on the counterfeit Xanax or marijuana found in the vehicle.

---

[2] Kentucky Revised Statute (KRS) 218A.1412(1)(d), a Class C felony.

[3] KRS 520.095(1)(b), a Class D felony at the time of this incident. The General Assembly has recently amended this statute, elevating the offense to a Class C felony. 2024 Ky. Acts ch. 174, § 47 (effective Jul. 15, 2024).

[4] KRS 532.080(3).

McDermott's trial took place over the course of two days, during which the Commonwealth presented testimony from several police officers, including Officer Patterson and the Muravchicks, which conformed to the foregoing narrative. The Commonwealth also presented testimony from a forensic specialist with the Kentucky State Police laboratory, who confirmed the presence of fentanyl in the counterfeit pills found with McDermott's sweatshirt. Additionally, the Commonwealth presented testimony from Detective Joseph Sisson, a computer forensics specialist with the Lexington Police Department. Detective Sisson testified regarding his analysis of the text messages found on McDermott's cell phone. The cell phone had numerous outgoing text messages which stated, "Yo, percs are in," "Percs 30 are in," or some variant thereof. Another outgoing text message from the cell phone, responding to an apparent inquiry regarding price, stated, "25 a pop right now."

Finally, the Commonwealth presented testimony from Detective Jared Curtsinger, a narcotics expert with the Lexington Police Department. Detective Curtsinger testified about counterfeit Percocet and Xanax, their origins in factories run by Mexican cartels, and how one could distinguish the counterfeit narcotics from the genuine medications. He also attested that the large amount of pills found, along with the large quantity of cash found on McDermott, generally indicated narcotics trafficking rather than simple drug possession by a user.

Following its deliberation, the jury returned a guilty verdict on the first-degree trafficking and first-degree fleeing or evading charges. McDermott did not testify during the guilt-or-innocence phase, but he provided testimony about his personal life, including a difficult childhood, during the penalty phase. During this testimony, when asked about the harm from illegal drugs, McDermott admitted he would "do a sale from time to time." After the conclusion of all testimony in the case, the jury found McDermott guilty of being a first-degree PFO. Thereafter, the jury recommended a sentence of ten years enhanced to ten years (*i.e.*, effectively no enhancement at all) for the trafficking charge, as well as two years enhanced to ten years for the fleeing or evading charge. The jury further recommended that the sentence be served concurrently, for a total term of ten years' incarceration. The trial court sentenced McDermott in conformity with the jury's recommendation. This appeal followed.

## II. ANALYSIS

McDermott presents two overarching issues on appeal. First, he argues the trial court abused its discretion in allowing certain portions of Detective Curtsinger's expert testimony. Second, McDermott argues he was prejudiced when the trial court allowed evidence of uncharged crimes, specifically the testimony surrounding the counterfeit Xanax and marijuana which were found in

the GMC. Several of McDermott's arguments are not preserved, and he asks for palpable error review. We consider each issue in turn.

Regarding McDermott's first assertion of error, regarding Detective Curtsinger's testimony, there are three distinct sub-issues. In his first argument, McDermott initially contends the trial court erred when it allowed Detective Curtsinger to testify as an expert. McDermott argues the summary of the detective's testimony failed to provide the "facts or analyses" upon which his testimony would be based, while the Commonwealth asserted that Detective Curtsinger would testify based on his "training and experience." (Appellant's Brief at 6.) The trial court overruled McDermott's objection.

Because this argument was preserved, we use the usual standard of review for evidentiary issues, which is abuse of discretion; *see Brown v. Commonwealth*, 416 S.W.3d 302, 309 (Ky. 2013) (citation omitted) ("A trial court's determination as to whether a witness is qualified to give expert testimony is subject to an abuse of discretion standard of review."). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

Here, McDermott argues that the trial court's failure to require Detective Curtsinger to present "the scientific facts, data, and reasons" for his

opinion prevented him from conducting an effective cross-examination. (Appellant's Brief at 9.) However, the Kentucky Supreme Court has repeatedly held that police officers may give expert testimony based on experience and training, without a reliance on the "strict factors of *Daubert*"[5] necessary for more traditional scientific expert testimony. *Brown*, 416 S.W.3d at 310 (citing *Dixon v. Commonwealth*, 149 S.W.3d 426, 431 (Ky. 2004)).

Detective Curtsinger testified that he worked with the Lexington Police Department for approximately twenty-one years, with fifteen of those years as part of a narcotics unit. His current assignment at the time of the trial was as part of a Drug Enforcement Agency (DEA) taskforce. There is no question that Detective Curtsinger had the sort of "specialized knowledge" that would aid the jury in understanding the evidence under the expert testimony rule, KRE[6] 702. Furthermore, the Commonwealth provided the defense in this case with discovery which included a copy of Detective Curtsinger's *curriculum vitae* and notice that he would give his opinion about the seized narcotics, which allowed the defense the fair opportunity to cross-examine the detective appropriately. We discern no abuse of discretion in allowing Detective Curtsinger to testify based on his experience and training.

---

[5] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

[6] Kentucky Rule of Evidence.

Next, McDermott argues the trial court erred when it allowed Detective Curtsinger to testify about the fentanyl within the seized pills and the text messages on McDermott's cell phone, when the jury had already heard these details from other Commonwealth witnesses. McDermott now asserts that this testimony was a "needless presentation of cumulative evidence" under KRE 403.

This argument is not preserved, and McDermott has requested palpable error review under RCr[7] 10.26. "Under RCr 10.26, an unpreserved error may generally be noticed on appeal if the error is 'palpable' and if it 'affects the substantial rights of a party.' Even then, relief is appropriate only 'upon a determination that manifest injustice resulted from the error.'" *Martin v. Commonwealth*, 409 S.W.3d 340, 344 (Ky. 2013) (emphasis omitted) (quoting RCr 10.26). Despite McDermott's complaint that Detective Curtsinger's testimony was cumulative of earlier testimony, the Kentucky Supreme Court has held

> [n]ot all evidence that is duplicative is therefore cumulative, and evidence should not be excluded on this ground merely because it overlaps with other evidence. Multiple witnesses bring multiple viewpoints and testimony from multiple sources about the same event is likely to differ in ways that are helpful to the factfinder.

*Doneghy v. Commonwealth*, 410 S.W.3d 95, 109 (Ky. 2013) (internal quotation marks and citations omitted). In this case, Detective Curtsinger was able to provide a different viewpoint than the Commonwealth's forensic specialists, who

---

[7] Kentucky Rule of Criminal Procedure.

-8-

were able to say *what* chemical was in the seized narcotics, and *what* text messages were on the seized cell phone. Detective Curtsinger was able to proffer testimony that aided the jury in determining *how* and *why* the seized items were indicative of narcotics trafficking. There was no palpable error in allowing this testimony.

For his third and final issue regarding Detective Curtsinger's testimony, McDermott argues the trial court erroneously overruled its objection as to relevance, regarding the origin of the seized fentanyl in clandestine laboratories run by Mexican cartels. McDermott argues the origin of the pills was not relevant to any of the elements in either his trafficking charge or his fleeing or evading charge. The Commonwealth contends the testimony was necessary and relevant so that the jury might understand why fentanyl was found in pills resembling legitimate medications. We agree. In *Sargent v. Commonwealth*, 813 S.W.2d 801 (Ky. 1991), the Kentucky Supreme Court held that police officers could testify in narcotics cases to "aid[] the jury in understanding the evidence and resolving the issues." *Id*. at 802. It was not unreasonable for the Commonwealth to aid the jury's understanding of the evidence, specifically regarding the origin of the illicit drugs in this case. The trial court did not abuse its discretion in denying McDermott's objection and allowing the detective to testify about the origin of the seized pills.

In his second overarching assertion of error, McDermott argues he was prejudiced by the introduction of uncharged offenses, specifically testimony about the counterfeit Xanax and marijuana that was found in the GMC. He argues this testimony should have been excluded as "evidence of other crimes, wrongs, or acts" under KRE 404(b). This claim of error is unpreserved, and McDermott requests review for palpable error under RCr 10.26.

For its part, the Commonwealth argues this evidence is admissible under one of the exceptions to KRE 404(b) exclusion, that the evidence was "inextricably intertwined with other evidence essential to the case[.]" KRE 404(b)(2). We agree, at least in part. "KRE 404(b)(2) allows the Commonwealth to present a complete, unfragmented picture of the crime and investigation . . . including a picture of the circumstances surrounding how the crime was discovered." *Kerr v. Commonwealth*, 400 S.W.3d 250, 261 (Ky. 2013) (internal quotation marks and citations omitted). Officer Justin Muravchick's investigation into whether the driver of the GMC was under the influence began with the smell of marijuana coming from the vehicle. In addition, some of the text messages coming from McDermott's cell phone spoke of "bars," a slang term for Xanax. Testimony about the presence of counterfeit Xanax and marijuana in the GMC may have allowed a complete and unfragmented picture of the circumstances in this case.

Even so, it *may* have been possible for the trial court to exclude the mention of Xanax and marijuana if McDermott had argued and preserved such a position in a timely motion *ad limine*. Because he did not do so, we are left to review for palpable error, in which we will only grant relief if there has been manifest injustice. "[W]hat a palpable error analysis 'boils down to' is whether the reviewing court believes there is a 'substantial possibility' that the result in the case would have been different without the error." *McDaniel v. Commonwealth*, 415 S.W.3d 643, 649 (Ky. 2013) (quoting *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006)).

With this in mind, there is no possibility that this claimed error would have changed the result in this case because the evidence against McDermott was overwhelming. He ran from a traffic stop in which he was simply a passenger. "As a general rule, proof of flight to elude capture or prevent discovery is admissible because 'flight is always some evidence of a sense of guilt.'" *Day v. Commonwealth*, 361 S.W.3d 299, 303 (Ky. 2012) (quoting *Rodriguez v. Commonwealth*, 107 S.W.3d 215 (Ky. 2003)). His grey sweatshirt, discarded during his flight from police, was discovered with a large quantity of illicit drugs alongside it. His cell phone contained numerous outgoing text messages asserting "percs are in," and quoted a price. When on the stand during the penalty phase, McDermott himself freely admitted that he would "do a sale from time to time."

There is no real question as to McDermott's guilt in this case. We discern no manifest injustice and no palpable error arising from the inclusion of testimony regarding the counterfeit Xanax and marijuana.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Julia K. Pearson
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky